# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

533 HARBOR COURT, LLC,                )
                                      )
        Plaintiff,                    )
                                      )      **08-80824**
v.                                    )      CASE NO.
                                      )
COLONIAL BANCGROUP, INC.,             )
d/b/a COLONIAL BANK, N.A., an         )      **CIV-MARRA**
Alabama corporation,                  )
                                      )
        Defendant.                    )

        **MAGISTRATE JUDGE**
        **JOHNSON**

## NOTICE OF REMOVAL

Defendant Colonial Bank, which is an Alabama state-chartered bank,[1] (incorrectly

identified above as "Colonial BancGroup, Inc. d/b/a Colonial Bank, N.A., an Alabama

corporation")[2] files this notice of removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  This

case should be removed to this District and Division, based on the allegations in the complaint.

---

[1]     On June 10, 2008, Colonial Bank converted from a national banking association to an Alabama state-chartered bank.  While it was a national banking association, its name was "Colonial Bank, N.A.," but now its name is "Colonial Bank."

[2]     Colonial BancGroup is a Delaware corporation.  It is the bank holding company that owns a substantial percentage of the stock of Colonial Bank.  Colonial BancGroup and Colonial Bank are separate entities.  Colonial BancGroup does not "do business as" Colonial Bank.  Undersigned counsel is outside counsel to both entities.  This notice proceeds on the assumption that Colonial Bank is the intended defendant, as the transaction described in the complaint is a transaction that involved Colonial Bank.  Even if Colonial BancGroup were the intended defendant, however, there would be complete diversity and removal would be proper.  To the extent that Colonial BancGroup is the intended defendant, undersigned counsel files this notice on behalf of Colonial BancGroup.

# I. GROUNDS FOR REMOVAL

## A. Timeliness

Plaintiff 533 Harbor Court, LLC filed this case on July 1, 2008. It was served on Colonial Bank on July 7, 2008. July 7, 2008 was the first date that Colonial Bank received a copy of the complaint. The case is pending as Case No. 2008-CA-20001 XXXX MB in the Circuit Court in and for Palm Beach County, Florida.

## B. Diversity of Citizenship

Plaintiff 533 Harbor Court, LLC is a Florida limited liability company doing business in Palm Beach County, Florida. *Complaint* ¶ 2 (Exhibit A). Colonial Bank is an Alabama state-chartered financial institution. *Id.* ¶ 3 ("an Alabama corporation"). Colonial Bank's principal place of business is Alabama and that is the state listed in its articles of incorporation.[3] Colonial Bank's articles of incorporation, certificate of good standing, permit to begin business as an Alabama state-chartered bank, and certificate of approval to convert to an Alabama state-chartered bank are attached (Exhibit B).

## C. Amount In Controversy

The complaint does not contain numbered counts and does not formally specify a cause of action against Colonial Bank. Plaintiff contends that in late 2004, two unauthorized persons opened a bank account at Colonial Bank in its name. *Complaint* ¶¶ 13-19 (Exhibit A). Plaintiff

---

[3]     Even if Colonial BancGroup were the defendant, there would be complete diversity. Colonial BancGroup is a Delaware corporation with its principal place of business in Alabama. A copy of the relevant portion of Colonial BancGroup's most recent Form 10-K filed with the Securities and Exchange Commission is attached at Exhibit D.

2

contends that those individuals deposited into and withdrew from that account over
$1,000,000.00 in late 2004 and early 2005. *Id.* ¶¶ 23-29. Plaintiff contends that Colonial Bank
had a "duty of inquiry during the Account application process" and "a duty to verify" that the
individuals "had authority to open the Account on behalf of [plaintiff]." *Id.* ¶¶ 33-34. Plaintiff
contends that Colonial Bank breached these duties and that the breach caused plaintiff damages.
*Id.* ¶¶ 35-39.

The complaint does not say that the funds that passed through this account belonged to
plaintiff. It does not specify an amount of damages that plaintiff seeks to recover. When a
complaint does not specify an amount of damages, the removing party may establish by a
preponderance of the evidence that the jurisdictional amount is in controversy.[4] The removing
party meets this burden "[i]f the jurisdictional amount is either stated clearly on the face of the
documents before the court, or readily deducible from them," *Lowery v. Alabama Power Co.*,
483 F.3d 1184, 1211 (11th Cir. 2007), or if the removing party can establish the jurisdictional
amount with other "factual information . . . [that has] come from the plaintiff," *id.*, 483 F.3d at
1215 n. 66. Here, the jurisdictional amount is readily deducible from plaintiff's complaint and

---

[4]    *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208-09 (11th Cir. 2007); *Allen v. Toyota Motor Sales USA, Inc.*, 155 Fed. Appx. 480, 481, 2005 WL 3096631 *2 (11th Cir. November 21, 2005); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *overruled on other grounds, Cohen v. Office Depot Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000); *see also, e.g., Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001); *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

3

from a demand letter that plaintiff sent to Colonial Bank before filing suit.

In the demand letter, plaintiff's counsel stated that the funds that passed through the account belonged to plaintiff. *March 13, 2008 Correspondence from Plaintiff's Counsel to Mr. Robert E. Lowder* (Exhibit C). Plaintiff's counsel demanded that Colonial Bank pay plaintiff an amount equal to the amount withdrawn from the account. *Id.*

> On December 16, 2004, Randolph Diamond and Timothy Diamond opened a checking account with your organization in the name of 533 Harbor Court, LLC. From December 21, 2004 through February 18, 2005, deposits in the amount of $1,115,000.00 were made into the account. All funds deposited into the account were the lawful property of 533 Harbor Court, LLC. From December 22, 2004 through February 23, 2005, funds in the amount of $1,112,501.19 were withdrawn from the account by Randolph Diamond and Timothy Diamond. Randolph Diamond and Timothy Diamond were not authorized to open the account on behalf of 533 Harbor Court, LLC nor withdraw funds from said account.

> \*               \*               \*               \*

> Based on the foregoing, demand is hereby made that you make payment in the amount of $1,112,501.19 within ten (10) days of receipt of this correspondence to the address referenced above. Should you ignore this demand for payment and fail to make payment within the prescribed time, we have been authorized to pursue on behalf of our client all available legal and/or administrative remedies against your organization without further notice.

*Id.* (Exhibit C). Colonial Bank's letter rejecting that demand, which references the $1,112,501.19 that plaintiff demanded, is attached to plaintiff's complaint as Exhibit E. *Complaint* (Exhibit A to this notice – Colonial Bank letter is Exhibit E to the complaint).

### D. <u>Service and Filing Fee Requirements; Copies of Pleadings, etc.</u>

Colonial Bank is serving a copy of this notice of removal on counsel for the plaintiff, is filing a copy with the Clerk of the Circuit Court in and for Palm Beach, Florida, and is paying the necessary filing fee with this notice. The only pleading and process that have been served on

4

Colonial Bank are the complaint and the summons.  They are attached to this notice as Exhibit A.

No order has been served on Colonial Bank in the state court action.  Colonial Bank also is filing

simultaneously herewith a motion to dismiss the complaint.

## II. CONCLUSION

For the foregoing reasons, Colonial Bank respectfully requests that this Court take

jurisdiction over and remove this case from the Circuit Court in and for Palm Beach County,

Florida to this Court; and that this Court make such other orders as may be appropriate to effect

the preparation and filing of a true record in this action of all proceedings that may be had in the

State Court.

Respectfully submitted,

By: _____

Ben H. Harris, III
Miller, Hamilton, Snider & Odom, L.L.C.
254 State Street
P.O. Box 46
Mobile, AL 36603
Telephone:     (251) 432-1414
Facsimile:     (251) 433-4106
benharris@mhsolaw.com
Fla. Bar No. 0049866
*Pro Hac Vice Application Pending*

and

Mark R. King, Esq.
markking@mhsolaw.com
Florida Bar No. 0085560
Regen J. Shanzer, Esq.

5

regenshanzer@mhsolaw.com
Fla. Bar No. 0051558
*Pro Hac Vice Application Pending*
Miller, Hamilton, Snider & Odom, L.L.C.
799 Brickell Plaza
Suite 701
Miami, Florida 33131
Telephone:      (305) 961-2800
Facsimile:      (305) 372-0180

Attorneys for Defendant Colonial Bank

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2008 I served a copy of the foregoing by first-class United States mail on the following:

Peter Bernhardt, Esq.
Carl T. Williams, Esq.
McDonald Hopkins, LLC
Flagler Center Tower
505 South Flagler Drive, Suite 300
West Palm Beach, FL 33401


Ben H. Harris, III, Esq.

# EXHIBIT "A"

# BHH COPY

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
07/07/2008
CT Log Number 513607339

|||||||||||||||||||||||||||||||||||||||||||||||||||||||

TO:   Carrie McCollum, Attorney
      Miller, Hamilton, Snider & Odom
      100 Colonial Bank Blvd., Suite B101
      Montgomery, AL 36117

RE:   **Process Served in Florida**

FOR:  The Colonial BancGroup, Inc. (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | 533 Harbor Court, LLC, Pltf. vs. Colonial Bancgroup, Inc., etc., Dft. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Palm Beach County Circuit Court, FL Case # 50-08-CA-2001 |
| **NATURE OF ACTION:** | Breach of Certain Operating Agreement - Negligence - Failure to verify that N. Diamond and T. Diamond had authority to open certain account on behalf of 533, Failure to request certain copy of the articles for 533, Failure to verify identity of 533, etc. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/07/2008 at 12:50 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | Peter Bernhardt McDonald Hopkins LLC 505 South Flagler Drive Suite 300 West Palm Beach, FL 33401 561-472-2121 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 798474727831 Email Notification, Carrie McCollum carriemccollum@mhsolaw.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Donna Moch |
| **ADDRESS:** | 1200 South Pine Island Road Plantation, FL 33324 |
| **TELEPHONE:** | 954-473-5503 |

RECEIVED
JUL 0 9 2008
BY: CMC
via Fed Ex

Page 1 of  1 / IT

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

533 HARBOR COURT, LLC.,

    Plaintiff,

v.

CASE NO.: 2008 CA 020001 XXXX MB

COLONIAL BANCGROUP, INC. d/b/a
COLONIAL BANK, N.A., an Alabama
Corporation,

    Defendant,

_____/

7-7-08

/25-0P

**SUMMONS**

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in
this action on Defendant, **COLONIAL BANCGROUP, INC. d/b/a COLONIAL BANK, N.A.,
an Alabama Corporation**

      by serving:      **CT Corporation System, Registered Agent**
                **1200 South Pine Island Road**
                **Plantation, FL  33324**

### IMPORTANT

    A lawsuit have been filed against you.  You have twenty (20) calendar days after this
Summons is served on you to file a written response to the attached Complaint with the Clerk of
the Court.  A phone call will not protect you; your written response, including the above case
number and named parties, must be filed if you want the Court to hear your case.  If you do not
file your response on time, you may lose the case, and your wages, money, and property may
thereafter be taken without further warning from the Court.  There are other legal requirements.
You may want to call an attorney right away.  If you do not know an attorney, you may call an
attorney referral service of a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written
response to the Court you must also mail or take a copy of your written response to the
"Plaintiff's Attorney" named below:

{1506148:}

*533 HARBOR COURT, LLC vs. COLONIAL BANK:*
*SUMMONS*
*Page 2 of 5*

Plaintiff's Attorney:

PETER M. BERNHARDT, ESQ.
CARL T. WILLIAMS, ESQ.
MCDONALD HOPKINS LLC
505 South Flagler Drive, Suite 300
West Palm Beach, FL  33401
Telephone:     (561) 472-2121
Facsimile:  (561) 472/2122

JUL 0 1 2008

SHARON R. BOCK
Clerk & Comptroller
P.O. Box 4667
West Palm Beach, Flor
33402-4667

      **DATED** this _____ day of ____, 2008.

                       SHARON R. BOCK
                       Clerk and Comptroller of the Circuit Court

                  BY:_____
                       As Deputy Clerk

**In accordance with the Americans With Disabilities Act, persons in need of a special accommodation to participate in this proceeding or to access a court service, program or activity shall, within a reasonable time prior to any proceeding or need to access a service, program or activity, contact the Administrative Office of the Court, 205 North Dixie Highway, Room 5.25, West Palm Beach, Florida, 33401; telephone (561) 355-2431, 1-800-955-8771 (TDD), or 1-800-955-8770 (V), via Florida Relay Service.**

{1506148:}

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

533 HARBOR COURT, LLC.,

    Plaintiff,

v.

                      CASE NO.:

COLONIAL BANCGROUP, INC. d/b/a
COLONIAL BANK, N.A., an Alabama
Corporation,

    Defendant,

_____/

COPY
RECEIVED FOR FILING
JUL 0 1 2008
SHARON R. BOCK
CLERK & COMPTROLLER

## COMPLAINT FOR NEGLIGENCE

Plaintiff, 533 HARBOR COURT, LLC, a Florida limited liability corporation (hereinafter, "533"), sues Defendant, COLONIAL BANCGROUP, INC. d/b/a COLONIAL BANK, N.A., an Alabama corporation (hereinafter, "COLONIAL") and in support thereof alleges the following:

### JURISDICTION, PARTIES AND VENUE

1.    This is an action for damages in excess of $15,000.00 excluding attorney's fees and costs.

2.    533 is a Florida limited liability company doing business in Palm Beach County, Florida.

3.    COLONIAL is an Alabama corporation engaged in the business of banking through its numerous bank branches in Palm Beach County and throughout the State of Florida.

4.    Venue is proper in Palm Beach County, Florida because: (1) the subject bank account was applied for and opened in Palm Beach County, Florida; (2) the documents required

to open the account were executed in Palm Beach County, Florida; and (3) the acts and/or omissions giving rise to this action occurred in Palm Beach County, Florida.

5.     All conditions precedent to institution of this action have been met, have occurred, have been performed, have been excused, and/or have been waived.

## ALLEGATIONS

6.     On or about November 3, 2004, 533 filed its Articles of Organization with the Florida Department of State (hereinafter, "Articles"). A copy of the Articles of Organization are attached hereto as **Exhibit "A"**.

7.     On or about November 3, 2004, Gerald Diamond (as Manager of 533) and Herbert Corkin (as sole Member of 533) executed the Limited Liability Company Operating Agreement of 533 HARBOR COURT, LLC which governed the operation of 533 ("Operating Agreement"). A copy of the Operating Agreement is attached hereto as **Exhibit "B"**.

8.     The sole purpose of 533 was ownership and development of one piece of residential property located in Delray Beach, Florida.

9.     Pursuant to the Articles and the Operating Agreement, Gerald Diamond was the sole Manager of 533 ("Manager").

10.     Pursuant to the Articles and the Operating Agreement, Herbert Corkin was the sole Member of 533 ("Member").

11.     Pursuant to Operating Agreement, only the Manager with the consent of the Member could open an account on behalf of 533.

12.     The Operating Agreement specifically required the Manager to obtain the Member's authorization to conduct the day-to-day operations of 533.

*533 HARBOR COURT, LLC vs. COLONIAL BANK:*
*COMPLAINT*
*Page 3 of 5*

13.     On or about December 16, 2004, Randolph Nicholas Diamond (hereinafter, "N. Diamond") and Timothy Diamond (Hereinafter "T. Diamond") made application to open a checking account on behalf of 533.

14.     On or about December 16, 2004, N. Diamond and T. Diamond executed the Limited Liability Company Resolution of Authority on behalf of 533. See **Exhibit "C"**.

15.     At no time did N. Diamond or T. Diamond have authority to execute **Exhibit "C"**.

16.     On or about December 16, 2004, N. Diamond and T. Diamond executed the Business Signature Card Contract. See **Exhibit "D"**.

17.     At no time did N. Diamond or T. Diamond have authority to execute **Exhibit "D"**.

18.     On or about December 16, 2004, 533 was issued a checking account with account number 8041277230 ("Account").

19.     At no time did N. Diamond and T. Diamond have authority to open an account on behalf of 533.

20.     At no time did the Member have knowledge of N. Diamond and T. Diamond's actions to open the Account.

21.     Had the Member authorized and had knowledge of the Account, the Member would have demanded that Account statements be mailed to his address and to his attention and requiring 2-party checks.

22.     At the time the Account was opened or shortly thereafter, N. Diamond and T. Diamond were provided with deposit slips, checks and debit cards with which they could deposits and withdraw money from the Account.

*533 HARBOR COURT, LLC vs. COLONIAL BANK:*
*COMPLAINT*
*Page 4 of 5*

23.     In a brief 58-day period from December 21, 2004 through February 18, 2005, the following deposits were made into the Account:

   (a)     December 21, 2004 - $560,000.00;

   (b)     February 1, 2005 - $500,000.00;

   (c)     February 4, 2005 - $50,000.00;

   (d)     February 18, 2005 - $5,000.00

24.     From December 21, 2004 through February 18, 2005, deposits into the Account totaled $1,115,000.00.

25.     From December 22, 2004 through December 30, 2004, 23 debits to the Account were made in which $335,648.31 was withdrawn from the Account by N. Diamond and/or T. Diamond.

26.     From January 1, 2005 through January 31, 2005, 8 debits to the Account were made in which $223,450.00 was withdrawn from the Account by N. Diamond and/or T. Diamond.

27.     From February 1, 2005 through February 28, 2005, 19 debits to the Account were made in which $553,402.88 was withdrawn from the Account by N. Diamond and/or T. Diamond.

28.     In a brief 63-day period from December 22, 2004 through February 28, 2005, $1,112,501.19 was withdrawn from the Account by N. Diamond and/or T. Diamond.

29.     At no time were N. Diamond and T. Diamond authorized to withdraw funds from the Account.

30.     Only three Account statements were generated by COLONIAL during this brief period of Account activity.

31.   The Member had no knowledge that the Account had been opened given that N. Diamond and T. Diamond had Account statements sent to an address which did not provide notice to the Member.

32.   The Member had no opportunity to obtain and review the Account statements given that N. Diamond and T. Diamond had the Account statements sent to an address which did not provide notice to the Manager and/or Member.

33.   COLONIAL had a common law duty of inquiry during the Account application process.

34.   COLONIAL had a duty to verify that N. Diamond and T. Diamond had authority to open the Account on behalf of 533.

35.   COLONIAL had a duty to verify the identity of 533 and its purported principals, N. Diamond and T. Diamond, pursuant to Section 326 of the Patriot Act.

36.   COLONIAL breached its common law duty of inquiry to 533 by failing to investigate and verify that N. Diamond and T. Diamond had authority to open the Account on behalf of 533.

37.   COLONIAL breached its common law duty of inquiry to 533 by failing to request a copy of the Articles for 533.  COLONIAL would have immediately known that N. Diamond and T. Diamond did not have authority to open the Account on behalf of 533 had COLONIAL reviewed the Articles.

38.   COLONIAL breached its common law duty of inquiry to 533 by failing to request a copy of the Operating Agreement for 533. COLONIAL would have immediately known that N. Diamond and T. Diamond did not have authority to open the Account on behalf of 533 had COLONIAL reviewed the Operating Agreement.

*533 HARBOR COURT, LLC vs. COLONIAL BANK:*
*COMPLAINT*
*Page 6 of 5*

39.   As a direct and proximate result of COLONIAL'S negligent acts and/or omissions set forth herein, 533 has suffered damages.

40.   533 has made demand upon COLONIAL to compensate 533 for damages incurred as a result of its acts and/or omissions.

41.   COLONIAL has refused to compensate 533 for damages resulting from COLONIAL'S acts and/or omissions. See **Exhibit "E"**.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, and such other and further relief as the Court deems just and proper.

Dated this __/st__ day of July, 2008.

Respectfully submitted,

MCDONALD HOPKINS LLC
Flagler Center Tower
505 South Flagler Drive, Suite 300
West Palm Beach, FL 33401
Tel. 561-472-2121
Fax 561-472-2122
*Attorney for Plaintiff 533 Harbor*

By _____

PETER BERNHARDT
Florida Bar Number: 969771
CARL T. WILLIAMS
Florida Bar Number: 529990

*Ashley Clark*

# Electronic Articles of Organization
## For
## Florida Limited Liability Company

L04000079840
FILED 8:00 AM
November 03, 2004
Sec. Of State
toline

## Article I

The name of the Limited Liability Company is:

533 HARBOR COURT, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

1177 GEORGE BUSH BLVD.
100
DELRAY BEACH, FL.  33483

The mailing address of the Limited Liability Company is:

1177 GEORGE BUSH BLVD.
100
DELRAY BEACH, FL.  33483

## Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The name and Florida street address of the registered agent is:

GREENBERG & STRELITZ, P.A.
4800 N. FEDERAL HIGHWAY
304D
BOCA RATON, FL.  33431

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature:  JEFFREY L. GREENBERG, PRESIDENT


EXHIBIT
"A"

## Article V

The name and address of managing members/managers are:

Title: MGR
GERALD DIAMOND
1177 GEORGE BUSH BLVD., SUITE 100
DELRAY BEACH,, FL. 33483

L04000079840
FILED 8:00 AM
November 03, 2004
Sec. Of State
tcline

## Article VI

The effective date for this Limited Liability Company shall be:

11/03/2004

Signature of member or an authorized representative of a member
Signature: GERALD DIAMOND



# LIMITED LIABILITY COMPANY
# OPERATING AGREEMENT
# OF
# 533 HARBOR COURT, LLC

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT ("Agreement") is made and entered into effective as of the 3rd day of November, 2004, by HERBERT CORKIN (sometimes hereinafter referred to as the "Member").

## W I T N E S S E T H:

WHEREAS, Articles of Organization ("Articles") legally creating 533 HARBOR COURT, LLC, a Florida limited liability company ("Company") were filed with the Department of State of the State of Florida, and the Articles are approved and the filing thereof ratified; and

WHEREAS, the Member desires to express in writing its understanding and agreement with respect to the formation and operation of the Company.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and conditions contained herein, the undersigned, intending to be legally bound, hereby agrees as follows:

## ARTICLE ONE
## INCORPORATION BY REFERENCE; PURPOSE; DEFINITIONS

1.1     Incorporation by Reference.

The foregoing recitals are hereby acknowledged to be true and are incorporated herein by reference.

1.2     Purpose of the Company.

The purpose for which the Company is organized is to own, develop and sell a single family residence located at 533 Harbor Court Lane, Delray Beach, Florida. Without in any way limiting the generality of the foregoing, the Company may: (i) enter into, perform and carry out other contracts and agreements, and secure approvals, permits and consents as may be necessary, appropriate or incidental to the accomplishment of the purposes of the Company; (ii) sell, exchange, lease, mortgage, invest, reinvest or otherwise dispose of all or any part of the Company's assets for cash, stock, other securities or other property or any combination thereof; (iii) borrow money and evidence the same by notes or other evidences of indebtedness and secure the same with liens on all or any portion of the assets of the Company in furtherance of any of or all of the purposes of the

EXHIBIT

"B"

DOE 001013

Company; and (iv) do all other acts and things which may be necessary, appropriate or incidental to carrying out of the business and purposes of the Company.

1.3     Certain Definitions.

As used in this Agreement, the following terms shall have the meanings hereinafter set forth, except as otherwise provided herein:

(a)     Affiliates.  When used with reference to a Member, (a) any person who, directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with the Member, (b) any person who is an officer of, partner in or trustee of, or serves in a similar capacity with respect to, the Member or of which the Member is an officer, partner or trustee, or with respect to which the Member serves in a similar capacity, or (c) any person who, directly or indirectly, is the beneficial owner of more than ten percent (10%) of any class of equity securities of, or otherwise has a substantial beneficial interest in, the Member or of which the Member is directly or indirectly the owner of more than ten percent (10%) of any class of equity securities or in which the Member has a substantial beneficial interest.

(b)     Available Cash.

Cash funds of the Company, excluding cash proceeds from a Terminating Capital Transaction, if any, and after provision for (i) payment of all outstanding and unpaid current obligations, expenses and charges of the Company as of such time (including all amounts of any principal or interest payable with respect to any loans from the Member); and (ii) a reasonable working reserve as determined by the Manager, with the consent of the Member, for the management and operation of the Company's business, determined from time to time by the Manager, with the consent of the Member, to be available for distribution to the Member.

(c)     Capital Contribution.

The amount of cash or the agreed fair market value of property contributed by the Member to the capital of the Company, as reflected in the books of the Company.

(d)     Capital Transaction.

An Interim Capital Transaction or a Terminating Capital Transaction.

(e)     Code.

The Internal Revenue Code of 1986, as amended from time to time, or any corresponding provision or provisions of any federal internal revenue law enacted in substitution of the Internal Revenue Code of 1986.

DOE 001014

(f)      Company.

The "Company" shall mean 533 HARBOR COURT, LLC, a Florida limited liability company.

(g)      Event of Termination.

Any of the events that result in dissolution of the Company as set forth in Section 7.1 hereof.

(h)      Interim Capital Transaction.

A transaction pursuant to which the Company borrows funds or refinances existing debt, a sale, condemnation, exchange, abandonment or other disposition of a portion (which is less than substantially all) of the assets of the Company, an insurance recovery or any other transaction, other than a Terminating Capital Transaction, that, in accordance with generally accepted accounting principles, is considered capital in nature.

(i)      Law.

The Florida Limited Liability Company Act, as amended from time to time.

(j)      Manager.

GERALD DIAMOND, or any entity or person (whether or not a Member) who may be appointed as Manager after the date hereof, with each having such rights and responsibilities as are set forth herein.

(k)      Member.

HERBERT CORKIN, or such other Person as may be hereafter admitted as a Member.

(l)      Member Interest or Interests.

The entire ownership interest of a Member in the Company at any particular time, including such Member's rights to any and all distributions, allocations and other incidents of participation in the Company to which such Member may be entitled as provided in this Agreement and under applicable law, together with the obligations of such Member to comply with all of the terms and provisions of this Agreement and the Law, and further including its Capital Account hereunder.

DOE 001015

(m)   Member Percentages.

The percentage interest of a Member in the Company. As of this date, the sole Member has a one hundred percent (100%) Member Percentage.

(n)   Regulations.

Regulations shall mean regulations issued by the United States Treasury Department under the Code.

(o)   Term.

The period commencing as of the date of this Agreement and ending upon the occurrence of an Event of Termination.

(p)   Terminating Capital Transaction.

A sale, condemnation, exchange or other disposition, whether by foreclosure, abandonment or otherwise, of all or substantially all of the then remaining assets of the Company or a transaction that will result in a dissolution of the Company.

## ARTICLE TWO
## MEMBER; MEMBERSHIP INTEREST

2.1   Name of Member; Principal Office.

(a)   The sole Member is HERBERT CORKIN.

(b)   The principal place of business for the transaction of the business of the Company shall be at such location as hereinafter may be determined by the Manager, with the consent of the Member.

2.2   Admission of Additional Members.

Additional Member(s) will be admitted to the Company only upon the consent and upon the terms agreed to by the Member.

2.3   Liability and Indemnification.

The Member, its directors, officers, employees and Affiliates, shall not be liable to the Company for any loss or liability incurred in connection with any act or omission in the conduct of the business of the Company in accordance with the terms hereof, except for any loss or liability which the Company incurs in connection with the Member's fraud, willful and wanton misconduct or

FTL:1322914:1

4

DOE 001016

gross negligence. The Company, to the fullest extent permitted by law, hereby agrees to defend and indemnifies and holds harmless the Member, its directors, officers, employees and Affiliates from and against any and all liability, loss, cost, expense or damage incurred or sustained by reason of any act or omission in the conduct of the business of the Company in accordance with the terms hereof, including, but not limited to, reasonable attorneys' and paralegals' fees through any and all negotiations, and trial and appellate levels; provided, however, the Company shall not indemnify the Member with respect to any of the foregoing incurred in connection with the fraud, willful and wanton misconduct or gross negligence of the Member. The provisions of this Section 2.3 shall survive the termination of the Company.

ARTICLE THREE
MANAGEMENT OF THE COMPANY

3.1    <u>Rights, Powers and Duties of the Manager</u>. The overall management and control of all aspects of the business and operations of the Company shall be vested exclusively in the Manager. The Manager shall have all the rights and powers provided in this Agreement and the Law and any action taken by the Manager shall constitute the act of and serve to bind the Company. The Manager, with the consent of the Member, shall conduct the day-to-day operations of the Company and shall use good faith efforts to carry out the business of the Company as set forth herein. With respect to all of its obligations, powers and responsibilities and the limitations thereon as provided in this Agreement, the Manager is authorized to execute and deliver, for and on behalf of the Company, only such agreements or instruments and incur only such obligations as the Member may deem necessary or desirable, all on such terms and conditions as it may deem necessary or desirable, and the execution of such agreements, instruments or other documents by the Manager shall be sufficient to bind the Company.

3.2    <u>Exercise of Rights and Powers</u>.

(a)    The Manager shall not be liable personally for the return of the Capital Contributions of the Member or any portions thereof, it being expressly understood that any such returns shall be made solely from the assets of the Company.

(b)    The Manager shall be obligated to devote only such time to the Company as shall reasonably be required to carry out its duties to the Company. Except to the extent expressly provided elsewhere in this Agreement, the Manager may delegate all or any of their powers, rights and obligations hereunder, and may appoint, employ, contract or otherwise deal with any person, including any affiliate, for the transaction of the business of the Company, which person or affiliate may, under the supervision of the Manager, perform any acts or services for the Company as the Manager may approve and may receive such compensation from the Company on account of such services as the Manager deems proper. Except as expressly provided herein, the Manager, in its discretion, is hereby authorized, empowered and directed to appoint any and all officers for the Company. The Manager may have active business interests other than the Company and shall have no obligation to permit the Company to participate in any such business interest or any other business opportunity.

3.3     Right to Rely on Authority of the Manager.  No person dealing with the Manager shall be required to determine the Manager's authority to make any undertaking on behalf of the Company, or to determine any fact or circumstance bearing upon the existence of the Manager's authority.

### ARTICLE FOUR
### CAPITAL CONTRIBUTIONS

4.1     Capital Contributions.

Capital Contributions may be made in the discretion of the Member.

4.2     Other Matters Relating to Capital Contributions.

Loans by the Member to the Company shall not be considered Capital Contributions.

### ARTICLE FIVE
### DISTRIBUTIONS

5.1     Distribution of Available Cash.

The Available Cash of the Company, if any, shall be distributed at such time as the Manager, with the consent of the Member, shall determine.

5.2     Distribution Following Terminating Capital Transaction.

Distributions following a Terminating Capital Transaction shall be distributed in the manner set forth in Section 7.2 hereof.

### ARTICLE SIX
### TAX STATUS

Solely for United States federal income tax purposes, as a "single member limited liability company," the Company shall be disregarded as an entity separate from the Member pursuant to the default classification prescribed under Section 301.7701-3(b)(1)(ii) of the Regulations. Accordingly, the Company shall be treated for federal tax purposes in the same manner as a sole proprietorship, branch, or division of the Member, shall not have a separate existence, and all tax attributes of the Company shall be reported by the Member. The Member shall take, or refrain from taking, any and all actions as may be necessary or appropriate to ensure the treatment of the Company as a disregarded entity for federal income tax purposes.

## ARTICLE SEVEN
## DISSOLUTION; TERMINATION

7.1     Dissolution.

The Company shall be dissolved, its assets shall be disposed of, and its affairs wound up only upon the occurrence of one or more of the following events ("Event of Termination"):

(a)     The written election by the Member that the Company should be dissolved; or

(b)     Any event pursuant to which the Company is required to be dissolved under the Law.

7.2     Wind-Up.

Upon the dissolution of the Company, the Manager, with the consent of the Member, shall make a final accounting of the business and affairs of the Company and shall proceed with reasonable promptness to liquidate the business, property and assets of the Company and to distribute the proceeds in the following order of priority:

(a)     To the payment of expenses of any sale, disposition or transfer of the Company assets in liquidation of the Company;

(b)     To the payment of just debts and liabilities (including any accrued, but unpaid interest) of the Company (including to the Member), in the order of priority provided by law;

(c)     To the establishment of any reserve that the Manager, with the consent of the Member, may determine to be reasonably necessary and adequate for any contingent liabilities and obligations of the Company or the Member arising out of or in connection with the business of the Company; and

(d)     To the Member.

The Member may elect to distribute the remaining property and assets of the Company, if any, in kind, in lieu of selling them.

DOE 001019

ARTICLE EIGHT
GENERAL PROVISIONS

8.1    Gender and Use of Singular and Plural.

All pronouns shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the party or parties, or their personal representatives, successors and assigns may require.

8.2    Headings.

The article and section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

8.3    Governing Law.

This Agreement shall be construed in accordance with the laws of the State of Florida, and agreed upon venue, to the extent permitted by law, shall be Palm Beach County, Florida.

8.4    Provisions Severable.

This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules, and regulations of the jurisdiction in which the parties do business. If any provision of this Agreement, or the application thereof to any Person or circumstance shall, for any reason or to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

THIS SPACE INTENTIONALLY LEFT BLANK

SIGNATURES CONTINUE ON FOLLOWING PAGE

FTL:1322914:1

8

DOE 001020

IN WITNESS WHEREOF, the undersigned has executed this Operating Agreement effective as of the day and year first above written.

MEMBER:

_____

HERBERT CORKIN

## JOINDER

The undersigned, hereby agrees to serve as Manager of 533 Harbor Court, LLC, a Florida limited liability company in accordance with the terms of this Agreement and hereby joins in, and agrees to be bound by, the terms and provisions of this Agreement.

_____
GERALD DIAMOND

DOE 001021

FEB-12-2008 TUE 11:33 AM CO  IIAL BANK        FAX NO. 56  788 8293        P. 01



# COLONIAL BANK, N.A.

## LIMITED LIABILITY COMPANY RESOLUTION OF AUTHORITY

| Bank Use Only | |
|---|---|
| Reviewed By | Dat |

**BANK INFORMATION**
To: Colonial Bank, N.A./ EAST BOCA RATON
("Colonial")
Street Address    140 NORTH FEDERAL HIGHWAY
City, State, Zip    BOCA RATON, FL 33432
Date    12/16/2004

**BUSINESS INFORMATION**
From: 893 HARBOR COURT LLC
("LLC") Name must include "LLC" designation
Street Address  1177 GEORGE BUSH BLVD #100
City, State, Zip DELRAY BEACH, FL 33483
Taxpayer I.D. Number  20-1887838

The LLC has met in accordance with its governing document and made the following resolution or regulation ("Resolution") regarding the relationship of the LLC to Colonial.

The LLC is a limited liability company organized under the laws of the State of ___FLORIDA___. The following is a list of all members and, if applicable, managing body of the LLC:

Members:    RANDOLPH NICHOLAS DIAMOND
            TIMOTHY DIAMOND

Managing Body:  GERALD DIAMOND

**1.    AUTHORIZATION**

(a) ☒ Any one member whose name is listed above is hereby authorized to act in the name of and on behalf of the LLC; and Colonial is entitled to accept and rely on such acts as acts of the LLC and in the LLC's name. Such acts may include, but are not limited to, those acts listed in paragraph 2 below.

(b) ☐ Any and manager or managing body whose name is listed above is hereby authorized to act in the name of and on behalf of the LLC; and Colonial is entitled to accept and rely on such acts as acts of the LLC and in the LLC's name. Such acts may include, but are not limited to, those acts listed in paragraph 2 below.

(c) ☐ Only the following members or managing body whose names are listed in this paragraph 1(c) are authorized to act in the name of and on behalf of the LLC; and Colonial is entitled to accept and rely on such acts as acts of the LLC and in the LLC's name. Such acts may include, but are not limited to, those acts listed in paragraph 2 below.

It is expressly resolved that Colonial may accept any such act as within the scope of the LLC's business and Colonial is under no obligation to make any inquiries to verify or confirm any act or to do anything to insure that the LLC's money or property is properly applied. Colonial is in no way responsible for the misapplication or misappropriation of LLC money or property as a result of any act by any authorized member or managing body pursuant to the authority granted herein.

2.    The above authorized members or managing body are authorized to, in the LLC's name, open accounts, purchase certificates of deposit and sign checks, notes, drafts, bills of exchange, acceptances, undertakings, orders for payment or withdrawal or transfer of money, or any other document regarding the ownership or disposition of LLC money. Further, they are hereby authorized to borrow money, incur liability, execute or endorse promissory notes or other documentary evidence of indebtness, pledge or otherwise encumbering the LLC's property, and transferring, selling, or assigning the same, selling, assigning or discounting the LLC's bills, notes, contracts and accounts receivable.

3.    ADOPTION AND RATIFICATION OF PRIOR ACTS. All prior acts of any authorized member or managing body in the name of or on behalf of the LLC with or for Colonial, are hereby adopted and ratified by the LLC.

4.    REVOCATION OF PRIOR RESOLUTIONS. This Resolution revokes any prior resolution of the LLC given to Colonial, but only to the extent that said resolution conflicts with or deviates from this Resolution. This Resolution shall continue and remain in effect until express, written revocation or modification signed by the appropriate number of members, or by the managing body, has been actually received by Colonial. No such revocation or modification shall relieve the LLC from any liability or obligation, or impose any new obligation or duty on Colonial, for any act made prior to actual receipt by Colonial of the revocation or modification.

5.    CHANGE IN MEMBERSHIP. If the LLC membership relationship is altered in any way, or if the LLC shall change its form (including incorporation or changing to a partnership), the LLC shall promptly notify Colonial and provide Colonial with a new Resolution if and as required by Colonial. Such change in composition of terms shall not constitute a revocation or alteration of this Resolution and all members and managing body shall remain subject to this Resolution and its provisions.

6.    OTHER AGREEMENTS. Any of the above-described members or managers are hereby authorized to enter into any of the agreements listed below; further, the designated members, managers or employees whose names are below and by each agreement and whose specimen signatures appear below are hereby authorized to enter into the agreements where their respective names appear:

☒ (a)    DEPOSIT ACCOUNTS  To enter into account agreements and sign signature cards.
ACCOUNT TITLE   893 HARBOR COURT LLC
Number of authorized signatures required for this purpose:  1
Names of designated members or managers and/or employees not listed above:  NA

☒ (b)    TELEPHONE TRANSFER AUTHORIZATION (telephone instructions to transfer funds in Corporate deposit accounts with Colonial)
Number of authorized signatures required for this purpose:  1
Names of designated members or managers and/or employees not listed above:  NA

☒ (c)    SAFE DEPOSIT BOX RENTAL
Number of authorized signatures required for this purpose:  1
Names of designated members or managers and/or employees not listed above:  NA

☒ (d)    NIGHT DEPOSIT AGREEMENT
Number of authorized signatures required for this purpose:  1
Names of designated members or managers and/or employees not listed above:  NA

☒ (e)    MERCHANT/BANKCARD SERVICES
Number of authorized signatures required for this purpose:  1
Names of designated members or managers and/or employees not listed above:  NA

☒ (f)    CASH MANAGEMENT SERVICES
Number of authorized signatures required for this purpose:  1
Names of designated members or managers and/or employees not listed above:  NA

☒ (g)    WIRE TRANSFER SERVICES
Number of authorized signatures required for this purpose:  1
Names of designated members or managers and/or employees not listed above:  NA

☒ (h)    OTHER ELECTRONIC BANKING SERVICES
Number of authorized signatures required for this purpose:  1
Names of designated members or managers and/or employees not listed above:  NA

Form SD-0296 (Rev. 08/03)          Original - Region          Copy (1) - Branch

**EXHIBIT**

"C"

FEB-12-2008 TUE 11:34 AM COLONIAL BANK                FAX NO. F   368 8283        P. 01/01

7.   SPECIMEN SIGNATURES.

I certify that the specimen signatures appearing below are the signatures of the duly qualified members, managing body and employees authorized to sign for the LLC by virtue of said Resolution.

Name (Typed)                                          Signature
RANDOLPH NICHOLAS DIAMOND

TIMOTHY DIAMOND

This Resolution was adopted on the date stated below by the undersigned, being the members or managing body of the LLC, in accordance with the governing document, and is binding on the undersigned and our legal representatives and successors, Colonial may consider the LLC continuing for a purposes and each member continuing as a member, until modification or revocation hereof is provided to Colonial

Date: 12/15/2004                                      Name of LLC  633 HARBOR COURT LLC
                                                      ATTESTED BY: TIMOTHY DIAMOND
Name (Typed)                                          Signature
RANDOLPH NICHOLAS DIAMOND

TIMOTHY DIAMOND



# COLONIAL BANK, N.A.

## Business Signature Card Contract

| | | |
|---|---|---|
| Date Opened | Opened By | Account # |
| 12/16/2004 | SANDY CHOW | |
| Region #    Branch # | Office | 8041277230 |
| 32         018 | EAST BOCA RATON | |
| Amount of Deposit | Source of Funds | Source Name/Number |
| $100.00 | CASH | CASH |
| Ownership | Account Type | Replacement Date |
| BUSINESS (1) | SMALL BUSINESS ADVANTAGE | |

Primary Account Owner Name and Address                    Special Mailing Instructions

533 HARBOR COURT, LLC

1177 GEORGE BUSH BLVD # 100
DELRAY BEACH, FL 33483

I (We) ask that this account be opened by Colonial Bank, N.A. (hereinafter referred to as "Colonial"). It is agreed that all transactions between Colonial and the undersigned shall be governed by the Rules and Regulations governing this account, and the undersigned hereby acknowledge receipt of a copy of such Rules; Products Brochure; Miscellaneous Rates and Fees Brochure, and Privacy Notice. It is also agreed that Colonial may modify or amend these Rules and Regulations from time to time without prior approval of the undersigned. Colonial is authorized to recognize the signature(s) below for the purposes of this account and to honor all directions, whether oral or written, from any of the signers. The undersigned certify that all information on this document (front and back) and the information on their Customer Information file is accurate.

Authorized Signature
Only one signature required unless otherwise stated. ( 1 )

1. RANDOLPH NICHOLAS DIAMOND                          SSN: 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

2. TIMOTHY DIAMOND                                    SSN: 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

3.                                                    SSN:

4.                                                    SSN:

5.                                                    SSN:

6.                                                    SSN:

**TIN Certification**

Reporting EIN   20-1887828

Important: Under penalties of perjury, I certify that the number shown above is my correct taxpayer identification number, I am a U.S. person (including a U.S. resident alien, and that (check appropriate box)

[X] I am not subject to backup withholding, because I am exempt from backup withholding, or because I have not been notified by the IRS that I am subject to backup withholding as a result of failure to report all interest or dividends, or because the IRS has notified me that I am no longer subject to backup withholding.

[ ] I am subject to backup withholding.

[ ] Foreign Business
(If checked, provide W-8)
For instructions, see the Internal Revenue Service form W-9
Under penalties of perjury, I certify that the information on this form is true, correct and complete.

Signature of U.S. Person                              Date

Initial Interest Rate    Annual Percentage Yield     Balance Range (Tiered products only)

Original
(Blank) SO-068410
(Rev. 09/04)

EXHIBIT
(( D ))



# Colonial BancGroup℠

March 28, 2008

*Via Facsimile 561-472-2975*
Carl T. Williams, Esquire
McDonald Hopkins
One Clearlake Centre
250 Australian Avenue S, Suite 700
West Palm Beach, Florida 33401

      *Re:*    *533 Harbor Court, LLC*

Dear Mr. Williams:

      Please accept my thanks for the ten-day extension within which to respond to your letter of March 13, 2008. I have reviewed the content of your letter and its attachments, and have gathered information regarding deposits/transfers into the checking account for 533 Harbor Court, LLC (the "Company") and the debits made from that account.

      I respectfully disagree with your claim that Colonial "acted negligently and breached duties owed to 533 Harbor Court, LLC." This claim is flawed for a number of reasons. First, a duty to the Company would only arise if the Company was a customer of Colonial. Therefore, if you concede that the Company was a customer of Colonial, then the account was properly opened and all transactions authorized. If the Company was not a customer, then no duty arises.

      Second, it is clear from the transactions and associations of Colonial with Mr. Gerald Diamond, that Randolph Diamond and Timothy Diamond had authority to act on behalf of Gerald Diamond, the managing member. The Diamonds (Gerald, Randolph, and Timothy) have a number of entities in which they share ownership and/or management authority. Mr. Gerald Diamond has repeatedly dealt with Colonial in these transactions and allowed Randolph and/or Timothy to act upon his behalf. These actions conveyed the authority to Randolph and/or Timothy to conduct similar transactions such as the one with the Company. Thus, Randolph and/or Timothy had at least apparent, if not actual, authority to conduct business on behalf of the Company.

      Finally, you will note that the address set up on the account for 533 Harbor Court is the same address as set forth in the Articles of Organization – 1177 George Bush #100, Delray Beach, Florida 33483. This is same address to which bank statements were sent. The Company had a duty to monitor and review its mail. So, either it reviewed the statements and failed to take



**EXHIBIT**
"*E*"

any action to protect its interest or it was negligent in the protection and handling of its mail. Either case contributed to any loss that was allegedly sustained by the Company. In addition, the Uniform Commercial Code statute of repose, UCC Section 4-406(f), codified in Florida as Fla. Stat. 674.406(6), bars a bank customer from recovering for alleged unauthorized transactions, if the Bank provides the customer with statements reflecting the transactions and the customer does not object to them within 180 days. The Company made no claim as required under the UCC and thus, any such claim is time barred. *See, Lowenstein v. Barnett Bank of South Florida, N.A.,* 720 So.2d 596, 597 (Fla. 3rd DCA 1998).

If one assumes *arguendo* that Randolph Diamond and/or Timothy Diamond lacked actual authority to open the account, which we have no proof is the case, the actions of the Manager, Gerald Diamond, in dealing with the Bank clothed them with apparent authority to do so. Moreover, the active negligence of the Company in the management of its affairs gave rise to the circumstances and prevents 533 Harbor Court, LLC's recovery in connection with the transactions.

Accordingly, Colonial respectfully declines your request for payment in the amount of $1,112,501.19. However, if you have some further information to support your claim, Colonial will be more than happy to address any new issue or evidence.

Sincerely yours,

David B. Byrne, Jr.
EVP-General Counsel

DBBjr/pac

# EXHIBIT "B"

**Beth Chapman**
Secretary of State

P.O. Box 5616
Montgomery, AL 36103-5616

# STATE OF ALABAMA

I, Beth Chapman, Secretary of State of the State of Alabama, having custody
of the Great and Principal Seal of said State, do hereby certify that

as appears on file and of record in this office, the pages
hereto attached, contain a true, accurate and literal copy of
articles of incorporation of Colonial Bank, as received and
filed in the office of the Secretary of State of Alabama on June
12, 2008, showing the date of incorporation as June 9, 2008, the
date said instrument was filed in the office of the Judge of
Probate of Montgomery County.

In Testimony Whereof, I have hereunto set my hand
and affixed the Great Seal of the State, at the Capitol,
in the City of Montgomery, on this day.



06/13/08

**Date**

*Beth Chapman*

**Beth Chapman**                                    **Secretary of State**

CORP 00280 PAGE 0252



**ARTICLES OF INCORPORATION**
**OF**
**COLONIAL BANK**

Pursuant to §§ 5-7A-20 through -24 of the Alabama Banking Code and § 10-2B-2.02 of the Alabama Business Corporation Act, the undersigned directors adopt the following Articles of Incorporation:

## ARTICLE I

### NAME

The name of the Corporation shall be Colonial Bank.

## ARTICLE II

### PURPOSES

The purposes for which the Corporation is formed include:

(A)  To convert Colonial Bank, N.A., a national banking association headquartered in Montgomery, Alabama, into a state bank with all the power and authority that may be exercised by a state bank.

(B)  To engage in the banking and financial services business.

(C)  To engage in trust services to the fullest extent provided by the Alabama Banking Code, as it may be amended from time to time, including, but not limited to, operating and conducting a trust department, becoming a trustee for any purpose, being appointed and acting as an executor, administrator, guardian or receiver and any other business or the exercise of any power incident to the business of trust and banking companies.

(D)  To engage in the transaction of any or all lawful business for which corporations may be incorporated under the laws of Alabama.

## ARTICLE III

### PRINCIPAL OFFICE

The location of the principal office of the Corporation in the State of Alabama shall be located in Montgomery, Montgomery County, Alabama.

RECEIVED
JUN 12 2008
SECRETARY OF STATE

CORP 00280 PAGE 0253

## ARTICLE IV

### CAPITAL STOCK

The amount of the total authorized capital stock shall be $100,000, divided into 100,000 shares of par value of $1.00 each.

The amount of the Corporation's paid-in capital shall be $2,182,908,688.

## ARTICLE V

### REGISTERED OFFICE & AGENT

The address of the initial registered office of the Corporation is 100 Colonial Bank Boulevard, Montgomery, Alabama, and the name of its initial registered agent at such address is Carrie Ellis McCollum, Miller, Hamilton, Snider & Odom, 100 Colonial Bank Boulevard, First Floor, Montgomery, Alabama 36117.

## ARTICLE VI

### INCORPORATOR

The following individual shall serve as the incorporator:

Robert E. Lowder
100 Colonial Bank Boulevard
Montgomery, Alabama 36117

## ARTICLE VII

### BOARD OF DIRECTORS

The names and addresses of the individuals who will serve as the Corporation's initial board of directors are as follows:

Robert E. Lowder                    Howell Henderson
100 Colonial Bank Boulevard         12 Mimosa
Montgomery, Alabama 36117           Pell City, Alabama 35125

- 2 -

CORP 00280 PAGE 0255

such section; (D) an intentional violation by such director of criminal law; (E) a breach of such director's duty of loyalty to the Corporation or its shareholders; or (F) an assessment or penalty made pursuant to the Alabama Banking Code. If the Alabama Business Corporation Act, or any successor statute thereto, is hereafter amended to authorize the further elimination or limitation of the liability of a director of a corporation, then the liability of a director of the Corporation, in addition to the limitations on liability provided herein, shall be limited to the fullest extent permitted by the Alabama Business Corporation Act, as amended, or any successor statute thereto. The limitation on the liability of directors of the Corporation contained herein shall apply, except to the extent prohibited by law, to liabilities arising out of acts or omissions occurring prior to the adoption of this Article X. Any repeal or modification of this Article X by the shareholders of the Corporation shall be prospective only and shall not adversely affect any limitation on the liability of a director of the Corporation existing at the time of such repeal or modification.

## ARTICLE XI

### BYLAWS

The Corporation shall have the power to make bylaws for the regulation and government of the Corporation, its agent, servant, or officers, and for all other purposes not inconsistent with the constitution and laws of the State of Alabama.

## ARTICLE XII

### EFFECTIVE TIME

These Articles shall become effective at 5:00 a.m. Central Daylight Time on June 10, 2008.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

- 4 -

CORP 00280 PAGE 0254

Phillip E. Adams, Jr.
Post Office Box 2069
Opelika, Alabama 36803-2069

William E. Powell, III
201 S. Bainbridge Street
Montgomery, Alabama 36104

Augustus K. Clements, III
2740 Central Parkway
Montgomery, Alabama 36106

Simuel Sippial, Jr.
2931 Day Street
Montgomery, Alabama 36108

Thomas F. Dyas, Jr.
Post Office Box 2830
Auburn, Alabama 36831

Paul D. Spina, Jr.
100 Canyon Park Circle, Suite D
Pelham, Alabama 35124

## ARTICLE VIII

### DURATION

The duration of the Corporation shall be perpetual, unless otherwise legally terminated.

## ARTICLE IX

### INDEMNIFICATION

The Corporation will make or agree to make indemnification payments to an institution-affiliated party, as defined at 12 U.S.C. § 1813(u), for an administrative proceeding or civil action initiated by any federal banking agency, that are reasonable and consistent with the requirements of 12 U.S.C. § 1828(k) and the implementing regulations thereunder. In addition, the Corporation will indemnify its officers and directors to the fullest extent permitted under applicable law.

The Corporation will not make or agree to make any indemnification payments to an institution-affiliated party, as defined at 12 U.S.C. § 1813(u), for liability imposed for any material violation of state law or regulation or for liability imposed by an applicable state regulatory authority.

## ARTICLE X

### EXCULPATION

A director shall not be liable to the Corporation or to its shareholders for money damages for any action taken, or any failure to take any action, as a director, except liability for (A) the amount of financial benefit received by such director to which such director is not entitled; (B) an intentional infliction of harm by such director on the Corporation or the shareholders; (C) a violation of Section 10-2B-8.33 of the Code of Alabama (1975) or any successor provision to

- 3 -

CORP 00280 PAGE 0256

In witness whereof, we have hereunto set our hands this ___19___ day of ___May___, 2008.

_____
Robert E. Lowder

_____
Howell Henderson

_____
Phillip E. Adams, Jr.

_____
William E. Powell, III

_____
Augustus K. Clements, III

_____
Simuel Sippial, Jr.

_____
Thomas F. Dyas, Jr.

_____
Paul J. Spina, Jr.

-5-

CORP 00280 PAGE 0257

In witness whereof, we have hereunto set our hands this _19th_ day of _May_, 2008.

_____  
Robert E. Lowder

_____  
Howell Henderson

_____  
Phillip E. Adams, Jr.

_____  
William E. Powell, III

_____  
Augustus K. Clements, III

_____  
Simuel Sippial, Jr.

_____  
Thomas F. Dyas, Jr.

_____  
Paul J. Spina, Jr.

–5–



# STATE OF ALABAMA
## STATE BANKING DEPARTMENT



June 11, 2008

TO WHOM IT MAY CONCERN:

   I hereby certify, as General Counsel for the State Banking Department for the State of

Alabama, that Colonial Bank, Montgomery, Alabama ("Colonial Bank"), is a bank chartered by

the Alabama State Banking Department and is duly authorized to conduct full service banking.

There is no filing against Colonial Bank to cancel or surrender its corporate charter.  Colonial

Bank is in good standing with our department and has filed all reports and paid all assessments in

a timely fashion.

   Witness my hand this the 11th day of June, 2008.

Elizabeth T. Bressler
General Counsel

CORP 00280 PAGE 0260

STATE OF ALABAMA

MONTGOMERY COUNTY

### PERMIT TO BEGIN BUSINESS

I, John D. Harrison, as Superintendent of Banks, State of Alabama, do hereby certify that

Colonial Bank, Montgomery, Alabama, has duly complied with all requirements of law relating

to the organization of a bank under the laws of the State of Alabama, and I do, therefore,

authorize it to transact business as a bank, and I further certify that it is authorized to conduct and

operate a trust department commencing at 5:00 a.m. on Tuesday, June 10, 2008.

Given under my hand and seal of office this the 9th day of June, 2008.



John D. Harrison
Superintendent of Banks

STATE OF ALABAMA

MONTGOMERY COUNTY

I, Elizabeth T. Bressler, General Counsel, State of Alabama, State Banking Department,

do hereby certify that the foregoing is a true and correct copy of the Certificate as the same

appears on file and of record in this office.

Elizabeth Bressler
General Counsel
State Banking Department

STATE OF ALA.MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT WAS FILED ON
CORP 00280 PG 0252-0260 2008 Jun 09 11:41AM
REESE MCKINNEY JR.
JUDGE OF PROBATE

| | | |
|---|---|---|
| INDEX | $5.00 | |
| REC FEE | $35.00 | |
| CERT | $0.00 | |
| CHECK TOTAL | $40.00 | |
| 78573 | Clerk: LESLIE 11:43AM | |

CERTIFIED COPY

I hereby certify this document was filed in
Montgomery County, Alabama on 6/9/08
Book 280
Page 252 - 260
Reese McKinley, Jr.
Judge of Probate

STATE OF ALABAMA

MONTGOMERY COUNTY

## PERMIT TO BEGIN BUSINESS

I, John D. Harrison, as Superintendent of Banks, State of Alabama, do hereby certify that

Colonial Bank, Montgomery, Alabama, has duly complied with all requirements of law relating

to the organization of a bank under the laws of the State of Alabama, and I do, therefore,

authorize it to transact business as a bank, and I further certify that it is authorized to conduct and

operate a trust department commencing at 5:00 a.m. on Tuesday, June 10, 2008.

Given under my hand and seal of office this the 9th day of June, 2008.

John D. Harrison
Superintendent of Banks

STATE OF ALABAMA

MONTGOMERY COUNTY

I, Elizabeth T. Bressler, General Counsel, State of Alabama, State Banking Department,

do hereby certify that the foregoing is a true and correct copy of the Certificate as the same

appears on file and of record in this office.

Elizabeth Bressler
General Counsel
State Banking Department

CORP 00280 PAGE 0258



# STATE OF ALABAMA
## STATE BANKING DEPARTMENT

June 9, 2008



VIA HAND DELIVERY

Mr. Robert E. Lowder, Chairman, President & CEO
Colonial Bank
100 Colonial Bank Boulevard
Montgomery, AL 36117

Re:  Colonial Bank

Dear Mr. Lowder:

     Enclosed are the documents you will need to complete the conversion of Colonial Bank into an Alabama banking corporation with the resulting bank being "Colonial Bank."  The Certificate of Approval reflects that the resulting bank will operate under the Articles of Incorporation of Colonial Bank, Montgomery, Alabama and under the title of Colonial Bank.

     The conversion shall become effective upon the filing of the Certificate of Approval and the Articles of Incorporation with the Probate Court of Montgomery County.  Please provide this office with proof of these recordings.  A copy of the recorded Certificate of Approval will suffice for this purpose.

Sincerely,

Elizabeth T. Bressler
General Counsel

ETB:nl

enclosures

Cc:    John D. Harrison, Superintendent of Banks
       Trabo Reed, Deputy Superintendent of Banks
       Wayne Cranford, Special Operations, and Large Institutions Division Manager
       FDIC

CORP 00280 PAGE 0259

STATE OF ALABAMA

MONTGOMERY COUNTY

## CERTIFICATE OF APPROVAL TO CONVERT
## TO A STATE BANKING CORPORATION

I, John D. Harrison, as Superintendent of Banks, State of Alabama, do hereby certify that

Colonial Bank, a national banking association, has fully complied with the provisions of § 5-7A-

20 through 5-7A-24, Code of Alabama 1975, to convert to a state banking corporation with the

name Colonial Bank and that Colonial Bank, the resulting bank, and all of its stockholders,

officers and employees shall have the same powers and privileges and shall be subject to the

same duties, liabilities and regulations, in all respects, as shall have been prescribed for banking

corporations originally organized as banking corporations under the laws of the State of

Alabama; and I do, therefore, authorize Colonial Bank, Montgomery, Alabama, subsequent to

the filing of this certificate and attached documents with the Judge of Probate of Montgomery

County, to transact business as a state banking corporation effective at 5:00 a.m. on Tuesday,

June 10, 2008. I further certify that all proper business can be entrusted to said bank including

the ability to exercise trust powers.

Given under my hand and seal of office this the 9th day of June, 2008.



John D. Harrison
Superintendent of Banks

CORP 00280 PAGE 0260

**STATE OF ALABAMA**

**MONTGOMERY COUNTY**

### PERMIT TO BEGIN BUSINESS

     I, John D. Harrison, as Superintendent of Banks, State of Alabama, do hereby certify that

Colonial Bank, Montgomery, Alabama, has duly complied with all requirements of law relating

to the organization of a bank under the laws of the State of Alabama, and I do, therefore,

authorize it to transact business as a bank, and I further certify that it is authorized to conduct and

operate a trust department commencing at 5:00 a.m. on Tuesday, June 10, 2008.

     Given under my hand and seal of office this the 9th day of June, 2008.



_____

John D. Harrison
Superintendent of Banks

**STATE OF ALABAMA**

**MONTGOMERY COUNTY**

     I, Elizabeth T. Bressler, General Counsel, State of Alabama, State Banking Department,

do hereby certify that the foregoing is a true and correct copy of the Certificate as the same

appears on file and of record in this office.

_____

Elizabeth Bressler
General Counsel
State Banking Department

STATE OF ALA. MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT WAS FILED ON
CORP 00280 PG 0252-0260 2008 Jun 09 11:41AM
REESE MCKINNEY JR.
JUDGE OF PROBATE

| | |
|---|---|
| INDEX | $5.00 |
| REC FEE | $35.00 |
| CERT | $0.00 |
| CHECK TOTAL | $40.00 |
| 78573 | Clerk: LESLIE 11:43AM |

### CERTIFIED COPY

I hereby certify this document was filed in
Montgomery County, Alabama on 6/9/08
Book 280
Page 252 - 260
Reese McKinney, Jr.
Judge of Probate

# EXHIBIT "C"

**McDonald** Hopkins

McDonald Hopkins Co., PA
Attorneys at Law

One Clearlake Centre
250 Australian Avenue, S
Suite 700
West Palm Beach, Florida 33401

P 561.472.7510
F 561.472.2975
mcdonaldhopkins.com

Cleveland  |  Columbus  :  West Palm Beach

March 13, 2008

**Via Certified Mail, Return Receipt Requested**

Robert E. Lowder, Chief Executive Officer
The Colonial BankGroup, Inc.
100 Colonial Bank Boulevard
Montgomery, Alabama 31167

MAR 17 2008

Re:    **533 Harbor Court, LLC / Account No.: 8041277230**

Dear Mr. Lowder:

Our firm represents 533 Harbor Court, LLC regarding the unauthorized opening and withdrawal of funds from the above referenced account. Please direct future correspondence to my attention.

On November 3, 2004, Herbert Corkin, as sole Member, and Gerald Diamond, as sole Manager, formed the Florida entity 533 Harbor Court, LLC. Pursuant to the Operating Agreement, no account could be opened and no withdrawal of funds made on behalf of 533 Harbor Court, LLC without proper authorization from Herbert Corkin and Gerald Diamond.

On December 16, 2004, Randolph Diamond and Timothy Diamond opened a checking account with your organization in the name of 533 Harbor Court, LLC. From December 21, 2004 through February 18, 2005, deposits in the amount of $1,115,000.00 were made into the account. All funds deposited into the account were the lawful property of 533 Harbor Court, LLC. From December 22, 2004 through February 23, 2005, funds in the amount of $1,112,501.19 were withdrawn from the account by Randolph Diamond and Timothy Diamond. Randolph Diamond and Timothy Diamond were not authorized to open the account on behalf of 533 Harbor Court, LLC nor withdraw funds from said account. Please see enclosed relevant documents for ease of reference.

Your organization has acted negligently and breached duties owed to 533 Harbor Court, LLC by (i) failing to perform due diligence in verifying that Randolph Diamond and Timothy Diamond were authorized to open the account and by (ii) failing to prevent the unlawful withdrawal of funds by Randolph Diamond and Timothy Diamond. In particular, your organization failed to request a copy of the Operating Agreement at the time the account was opened which would have revealed that Randolph Diamond and Timothy Diamond were not authorized to open the account nor make withdrawals from the account. Even a simple review of records of the Florida

$M_H$

{1421577:2}

Robert E. Lowder
March 13, 2008
Page 2

Secretary of State would have revealed that neither Randolph Diamond nor Timothy Diamond were ever Members of 533 Harbor Court, LLC. As a direct and proximate result of your organization's acts and/or omissions, 533 Harbor Court, LLC has suffered damages in excess of one million dollars.

Based on the foregoing, demand is hereby made that you make payment in the amount of $1,112,501.19 within ten (10) days of receipt of this correspondence to the address referenced above. Should you ignore this demand for payment and fail to make payment within the prescribed time, we have been authorized to pursue on behalf of our client all available legal and/or administrative remedies against your organization without further notice.

Very truly yours,

Carl T. Williams, Esquire
CTW/jap

cc:    533 Harbor Court, LLC c/o Herbert Corkin

M

{961789:}



# COLONIAL BANK, N.A.

## Business Signature Card Contract

| | | |
|---|---|---|
| **Date Opened** | **Opened By** | **Account #** |
| 12/16/2004 | SANDY CHOW | 8041277230 |
| **Region #**   **Branch #** | **Office** | |
| 32   018 | EAST BOCA RATON | |
| **Amount of Deposit** | **Source of Funds** | **Source Name/Number** |
| $100.00 | CASH | CASH |
| **Ownership** | **Account Type** | **Replacement Date** |
| BUSINESS (1) | SMALL BUSINESS ADVANTAGE | |

**Primary Account Owner Name and Address**      **Special Mailing Instructions**

533 HARBOR COURT, LLC

1177 GEORGE BUSH BLVD # 100
DELRAY BEACH, FL 33483

I (We) ask that this account be opened by Colonial Bank, N.A. (hereinafter referred to as "Colonial"). It is agreed that all transactions between Colonial and the undersigned shall be governed by the Rules and Regulations governing this account, and the undersigned hereby acknowledge receipt of a copy of such Rules, Products Brochure; Miscellaneous Rates and Fees Brochure, and Privacy Notice. It is also agreed that Colonial may modify or amend these Rules and Regulations from time to time without prior approval of the undersigned. Colonial is authorized to recognize the signature(s) below for the purposes of this account and to honor all directions, whether oral or written, from any of the signers. The undersigned certify that all information on this document (front and back) and the information on their Customer Information file is accurate.

**Authorized Signature**
Only one signature required unless otherwise stated. [ ]

| | | |
|---|---|---|
| 1. RANDOLPH NICHOLAS DIAMOND | SSN | 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 |
| 2. TIMOTHY DIAMOND | SSN | 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 |
| 3. | SSN: | |
| 4. | SSN: | |
| 5. | SSN: | |
| 6. | SSN: | |

**TIN Certification**      **Reporting EIN**   20-1887828

Important: Under penalties of perjury, I certify that the number shown above is my correct taxpayer identification number, I am a U.S. person (including a U.S. resident alien), and that I check appropriate box)

[X] I am not subject to backup withholding, because I am exempt from backup withholding, or because I have not been notified by the IRS that I am subject to backup withholding as a result of failure to report all interest or dividends, or because the IRS has notified me that I am no longer subject to backup withholding;

[ ] I am subject to backup withholding.

[ ] Foreign Business
(If checked, provide W-8)
For instructions, see the Internal Revenue Service form W-9.
Under penalties of perjury, I certify that the information on this form is true, correct and complete.

Signature of U.S. Person _____      Date _____

| **Initial Interest Rate** | **Annual Percentage Yield** | **Balance Range (Tiered products only)** |
|---|---|---|
| | | |

Original
(Front) SD-05948
(Rev. 09/04)

2008-Feb-01 01:31 PM colonial bank 2054028086                                                    2/3

FEB-12-2008 TUE 11:33 AM COLONIAL BANK          FAX NO. 561 388 8283           P. 01



# COLONIAL BANK, N.A.

| | Bank Use Only |
|---|---|
| Reviewed By | Date |

## LIMITED LIABILITY COMPANY RESOLUTION OF AUTHORITY

**BANK INFORMATION**
To: Colonial Bank, N.A./ __EAST BOCA RATON__
("Colonial")
Street Address __140 NORTH FEDERAL HIGHWAY__
City, State, Zip __BOCA RATON, FL 33432__
Date __12/18/2004__

**BUSINESS INFORMATION**
From: __833 HARBOR COURT LLC__
("LLC") Name must include "LLC" designation
Street Address __3177 GEORGE BUSH BLVD #100__
City, State, Zip __DELRAY BEACH, FL 33483__
Taxpayer I.D. Number __20-1887829__

The LLC has met in accordance with its governing document and made the following resolution or regulation ("Resolution") regarding the relationship of the LLC to Colonial.

The LLC is a limited liability company organized under the laws of the State of __FLORIDA__. The following is a list of all members and, if applicable, managing body of the LLC:

Members:  RANDOLPH NICHOLAS DIAMOND
          TIMOTHY DIAMOND

Managing Body:  GERALD DIAMOND

1.  **AUTHORIZATION**

    (a) ☒ Any one member whose name is listed above is hereby authorized to act in the name of and on behalf of the LLC and Colonial is entitled to accept and rely on such acts as acts of the LLC and in the LLC's name. Such acts may include, but are not limited to, those acts listed in paragraph 2 below.

    (b) ☐ Any one manager or managing body whose name is listed above is hereby authorized to act in the name of and on behalf of the LLC; and Colonial is entitled to accept and rely on such acts as acts of the LLC and in the LLC's name. Such acts may include, but are not limited to, those acts listed in paragraph 2 below.

    (c) ☐ Only the following members or managing body whose names are listed in this paragraph 1(c) are authorized to act in the name of and on behalf of the LLC and Colonial is entitled to accept and rely on such acts as acts of the LLC and in the LLC's name. Such acts may include, but are not limited to, those acts listed in paragraph 2 below.

    It is expressly resolved that Colonial may accept any such act as within the scope of the LLC's business and Colonial is under no obligation to make any inquiries to verify or confirm any act or to do anything to insure that the LLC's money or property is properly applied. Colonial is in no way responsible for the misapplication of LLC money or property as a result of any act by any authorized member of managing body pursuant to the authority granted herein.

2.  The above authorized members or managing body are authorized to, in the LLC's name, open accounts, purchase certificates of deposit and/or checks, notes, drafts, bills of exchange, acceptances, undertakings, orders for payment or withdrawal or transfer of money, or any other document regarding the ownership or disposition of LLC's money; further, they are hereby authorized to borrow money, incur liability, execute or endorse promissory notes or other documentary evidence of obligations, including renewals, modifications and extensions thereof, mortgaging, pledging or otherwise encumbering the LLC's property, and transferring, selling, or assigning the same, selling, assigning or discounting the LLC's bills, notes, contracts and accounts receivable.

3.  **ADOPTION AND RATIFICATION OF PRIOR ACTS.** All prior acts of any authorized member or managing body in the name of or on behalf of the LLC with or for Colonial, are hereby adopted and ratified by the LLC.

4.  **REVOCATION OF PRIOR RESOLUTIONS.** This Resolution revokes any prior resolution of the LLC given to Colonial, but only to the extent that said resolution conflicts with or deviates from this Resolution. This Resolution shall continue and remain in effect until express, written revocation or modification signed by the appropriate number of members, or by the managing body, has been actually received by Colonial. No such revocation or modification shall relieve the LLC from any liability or obligation, or impose any new obligation or duty on Colonial, for any act made prior to actual receipt by Colonial of the revocation or modification.

5.  **CHANGE IN MEMBERSHIP.** If the LLC membership relationship is altered in any way, or if the LLC shall change its form (including incorporation or changing to a partnership), the LLC shall promptly notify Colonial and provide Colonial with a new Resolution if and as required by Colonial. Such change in composition or forms shall not constitute a revocation or alteration of this Resolution and all members and managing body shall remain subject to this Resolution and its provisions.

6.  **OTHER AGREEMENTS.** Any of the above-described members or managers are hereby authorized to enter into any of the agreements listed below; further, the designated members, managers or employees whose names are listed by each agreement and whose specimen signatures appear below are hereby authorized to enter into the agreements where their respective names appear:

    ☒ (a) **DEPOSIT ACCOUNTS.** To enter into account agreements and sign signature cards.
    ACCOUNT TITLE __833 HARBOR COURT LLC__
    Number of authorized signatures required for this purpose: __1__
    Names of designated members or managers and/or employees not listed above: __NA__

    ☒ (b) **TELEPHONE TRANSFER AUTHORIZATION** (telephone instructions to transfer funds in Corporate deposit accounts with Colonial)
    Number of authorized signatures required for this purpose: __1__
    Names of designated members or managers and/or employees not listed above: __NA__

    ☒ (c) **SAFE DEPOSIT BOX RENTAL**
    Number of authorized signatures required for this purpose: __1__
    Names of designated members or managers and/or employees not listed above: __NA__

    ☒ (d) **NIGHT DEPOSIT AGREEMENT**
    Number of authorized signatures required for this purpose: __1__
    Names of designated members or managers and/or employees not listed above: __NA__

    ☒ (e) **MERCHANT/BANKCARD SERVICES**
    Number of authorized signatures required for this purpose: __1__
    Names of designated members or managers and/or employees not listed above: __NA__

    ☒ (f) **CASH MANAGEMENT SERVICES**
    Number of authorized signatures required for this purpose: __1__
    Names of designated members or managers and/or employees not listed above: __NA__

    ☒ (g) **WIRE TRANSFER SERVICES**
    Number of authorized signatures required for this purpose: __1__
    Names of designated members or managers and/or employees not listed above: __NA__

    ☒ (h) **OTHER ELECTRONIC BANKING SERVICES**
    Number of authorized signatures required for this purpose: __1__
    Names of designated members or managers and/or employees not listed above: __NA__

Bank SP-0226 (Rev. 08/03)            Original - Region    Copy (1) - Branch    Copy (2) - Customer

2008-Feb-01 01:31 PM colonial bank 2054028086                                    3/3

FEB-12-2008 TUE 11:34 AM COLONIAL BANK          FAX NO. 561 368 8293        P. 01/01

7.   SPECIMEN SIGNATURES.

I certify that the specimen signatures appearing below are the signatures of the duly qualified members, managing body and employees authorized to sign for the LLC by virtue of said Resolution.

| Name (Typed) | Signature |
|---|---|
| RANDOLPH NICHOLAS DIAMOND | |
| TIMOTHY DIAMOND | |

This Resolution was adopted on the date stated below by the undersigned, being the members or managing body of the LLC, in accordance with the governing document, and is binding on the undersigned and our legal representatives and successors. Colonial may consider the LLC continuing for all purposes and each member continuing as a member, until modification or revocation hereof is provided to Colonial

Date:  12/18/2004

Name of LLC  622 HARBOR COURT LLC
ATTESTED BY: TIMOTHY DIAMOND

| Name (Typed) | Signature |
|---|---|
| RANDOLPH NICHOLAS DIAMOND | |
| TIMOTHY DIAMOND | |

2008·Feb·03  05:56 PM Colonial Bank 2054028086                                          /3

# Electronic Articles of Organization
## For
## Florida Limited Liability Company

L04000079840
FILED 8:00 AM
November 03, 2004
Sec. Of State
tcline

## Article I
The name of the Limited Liability Company is:

533 HARBOR COURT, LLC

## Article II
The street address of the principal office of the Limited Liability Company is:

1177 GEORGE BUSH BLVD.
100
DELRAY BEACH, FL.  33483

The mailing address of the Limited Liability Company is:

1177 GEORGE BUSH BLVD.
100
DELRAY BEACH, FL.  33483

## Article III
The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV
The name and Florida street address of the registered agent is:

GREENBERG & STRELITZ, P.A.
4800 N. FEDERAL HIGHWAY
304D
BOCA RATON, FL.  33431

Having been named as registered agent and to accept service of process
for the above stated limited liability company at the place designated
in this certificate, I hereby accept the appointment as registered agent
and agree to act in this capacity. I further agree to comply with the
provisions of all statutes relating to the proper and complete performance
of my duties, and I am familiar with and accept the obligations of my
position as registered agent.

Registered Agent Signature;  JEFFREY L. GREENBERG, PRESIDENT

## Article V

The name and address of managing members/managers are:

Title: MGR
GERALD DIAMOND
1177 GEORGE BUSH BLVD., SUITE 100
DELRAY BEACH., FL. 33483

L04000079840
FILED 8:00 AM
November 03, 2004
Sec. Of State
tcline

## Article VI

The effective date for this Limited Liability Company shall be:

11/03/2004

Signature of member or an authorized representative of a member

Signature: GERALD DIAMOND



## LIMITED LIABILITY COMPANY
## OPERATING AGREEMENT
## OF
## 533 HARBOR COURT, LLC

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT ("Agreement") is made and entered into effective as of the 3rd day of November, 2004, by HERBERT CORKIN (sometimes hereinafter referred to as the "Member").

### W I T N E S S E T H:

WHEREAS, Articles of Organization ("Articles") legally creating 533 HARBOR COURT, LLC, a Florida limited liability company ("Company") were filed with the Department of State of the State of Florida, and the Articles are approved and the filing thereof ratified; and

WHEREAS, the Member desires to express in writing its understanding and agreement with respect to the formation and operation of the Company.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and conditions contained herein, the undersigned, intending to be legally bound, hereby agrees as follows:

### ARTICLE ONE
### INCORPORATION BY REFERENCE; PURPOSE; DEFINITIONS

1.1     Incorporation by Reference.

The foregoing recitals are hereby acknowledged to be true and are incorporated herein by reference.

1.2     Purpose of the Company.

The purpose for which the Company is organized is to own, develop and sell a single family residence located at 533 Harbor Court Lane, Delray Beach, Florida. Without in any way limiting the generality of the foregoing, the Company may: (i) enter into, perform and carry out other contracts and agreements, and secure approvals, permits and consents as may be necessary, appropriate or incidental to the accomplishment of the purposes of the Company; (ii) sell, exchange, lease, mortgage, invest, reinvest or otherwise dispose of all or any part of the Company's assets for cash, stock, other securities or other property or any combination thereof; (iii) borrow money and evidence the same by notes or other evidences of indebtedness and secure the same with liens on all or any portion of the assets of the Company in furtherance of any of or all of the purposes of the

FTL:1322914:1                               1

DOE 001013

Company; and (iv) do all other acts and things which may be necessary, appropriate or incidental to carrying out of the business and purposes of the Company.

1.3     Certain Definitions.

As used in this Agreement, the following terms shall have the meanings hereinafter set forth, except as otherwise provided herein:

(a)     Affiliates.  When used with reference to a Member, (a) any person who, directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with the Member, (b) any person who is an officer of, partner in or trustee of, or serves in a similar capacity with respect to, the Member or of which the Member is an officer, partner or trustee, or with respect to which the Member serves in a similar capacity, or (c) any person who, directly or indirectly, is the beneficial owner of more than ten percent (10%) of any class of equity securities of, or otherwise has a substantial beneficial interest in, the Member or of which the Member is directly or indirectly the owner of more than ten percent (10%) of any class of equity securities or in which the Member has a substantial beneficial interest.

(b)     Available Cash.

Cash funds of the Company, excluding cash proceeds from a Terminating Capital Transaction, if any, and after provision for (i) payment of all outstanding and unpaid current obligations, expenses and charges of the Company as of such time (including all amounts of any principal or interest payable with respect to any loans from the Member); and (ii) a reasonable working reserve as determined by the Manager, with the consent of the Member, for the management and operation of the Company's business, determined from time to time by the Manager, with the consent of the Member, to be available for distribution to the Member.

(c)     Capital Contribution.

The amount of cash or the agreed fair market value of property contributed by the Member to the capital of the Company, as reflected in the books of the Company.

(d)     Capital Transaction.

An Interim Capital Transaction or a Terminating Capital Transaction.

(e)     Code.

The Internal Revenue Code of 1986, as amended from time to time, or any corresponding provision or provisions of any federal internal revenue law enacted in substitution of the Internal Revenue Code of 1986.

DOE 001014

(f)     Company.

The "Company" shall mean 533 HARBOR COURT, LLC, a Florida limited liability company.

(g)     Event of Termination.

Any of the events that result in dissolution of the Company as set forth in Section 7.1 hereof.

(h)     Interim Capital Transaction.

A transaction pursuant to which the Company borrows funds or refinances existing debt, a sale, condemnation, exchange, abandonment or other disposition of a portion (which is less than substantially all) of the assets of the Company, an insurance recovery or any other transaction, other than a Terminating Capital Transaction, that, in accordance with generally accepted accounting principles, is considered capital in nature.

(i)     Law.

The Florida Limited Liability Company Act, as amended from time to time.

(j)     Manager.

GERALD DIAMOND, or any entity or person (whether or not a Member) who may be appointed as Manager after the date hereof, with each having such rights and responsibilities as are set forth herein.

(k)     Member.

HERBERT CORKIN, or such other Person as may be hereafter admitted as a Member.

(l)     Member Interest or Interests.

The entire ownership interest of a Member in the Company at any particular time, including such Member's rights to any and all distributions, allocations and other incidents of participation in the Company to which such Member may be entitled as provided in this Agreement and under applicable law, together with the obligations of such Member to comply with all of the terms and provisions of this Agreement and the Law, and further including its Capital Account hereunder.

DOE 001015

(m)   Member Percentages.

The percentage interest of a Member in the Company. As of this date, the sole Member has a one hundred percent (100%) Member Percentage.

(n)   Regulations.

Regulations shall mean regulations issued by the United States Treasury Department under the Code.

(o)   Term.

The period commencing as of the date of this Agreement and ending upon the occurrence of an Event of Termination.

(p)   Terminating Capital Transaction.

A sale, condemnation, exchange or other disposition, whether by foreclosure, abandonment or otherwise, of all or substantially all of the then remaining assets of the Company or a transaction that will result in a dissolution of the Company.

## ARTICLE TWO
## MEMBER; MEMBERSHIP INTEREST

2.1   Name of Member; Principal Office.

(a)   The sole Member is HERBERT CORKIN.

(b)   The principal place of business for the transaction of the business of the Company shall be at such location as hereinafter may be determined by the Manager, with the consent of the Member.

2.2   Admission of Additional Members.

Additional Member(s) will be admitted to the Company only upon the consent and upon the terms agreed to by the Member.

2.3   Liability and Indemnification.

The Member, its directors, officers, employees and Affiliates, shall not be liable to the Company for any loss or liability incurred in connection with any act or omission in the conduct of the business of the Company in accordance with the terms hereof, except for any loss or liability which the Company incurs in connection with the Member's fraud, willful and wanton misconduct or

DOE 001016

gross negligence. The Company, to the fullest extent permitted by law, hereby agrees to defend and indemnifies and holds harmless the Member, its directors, officers, employees and Affiliates from and against any and all liability, loss, cost, expense or damage incurred or sustained by reason of any act or omission in the conduct of the business of the Company in accordance with the terms hereof, including, but not limited to, reasonable attorneys' and paralegals' fees through any and all negotiations, and trial and appellate levels; provided, however, the Company shall not indemnify the Member with respect to any of the foregoing incurred in connection with the fraud, willful and wanton misconduct or gross negligence of the Member. The provisions of this Section 2.3 shall survive the termination of the Company.

## ARTICLE THREE
## MANAGEMENT OF THE COMPANY

3.1     Rights, Powers and Duties of the Manager. The overall management and control of all aspects of the business and operations of the Company shall be vested exclusively in the Manager. The Manager shall have all the rights and powers provided in this Agreement and the Law and any action taken by the Manager shall constitute the act of and serve to bind the Company. The Manager, with the consent of the Member, shall conduct the day-to-day operations of the Company and shall use good faith efforts to carry out the business of the Company as set forth herein. With respect to all of its obligations, powers and responsibilities and the limitations thereon as provided in this Agreement, the Manager is authorized to execute and deliver, for and on behalf of the Company, only such agreements or instruments and incur only such obligations as the Member may deem necessary or desirable, all on such terms and conditions as it may deem necessary or desirable, and the execution of such agreements, instruments or other documents by the Manager shall be sufficient to bind the Company.

3.2     Exercise of Rights and Powers.

(a)     The Manager shall not be liable personally for the return of the Capital Contributions of the Member or any portions thereof, it being expressly understood that any such returns shall be made solely from the assets of the Company.

(b)     The Manager shall be obligated to devote only such time to the Company as shall reasonably be required to carry out its duties to the Company. Except to the extent expressly provided elsewhere in this Agreement, the Manager may delegate all or any of their powers, rights and obligations hereunder, and may appoint, employ, contract or otherwise deal with any person, including any affiliate, for the transaction of the business of the Company, which person or affiliate may, under the supervision of the Manager, perform any acts or services for the Company as the Manager may approve and may receive such compensation from the Company on account of such services as the Manager deems proper. Except as expressly provided herein, the Manager, in its discretion, is hereby authorized, empowered and directed to appoint any and all officers for the Company. The Manager may have active business interests other than the Company and shall have no obligation to permit the Company to participate in any such business interest or any other business opportunity.

DOE 001017

3.3     Right to Rely on Authority of the Manager.  No person dealing with the Manager shall be required to determine the Manager's authority to make any undertaking on behalf of the Company, or to determine any fact or circumstance bearing upon the existence of the Manager's authority.

## ARTICLE FOUR
## CAPITAL CONTRIBUTIONS

4.1     Capital Contributions.

Capital Contributions may be made in the discretion of the Member.

4.2     Other Matters Relating to Capital Contributions.

Loans by the Member to the Company shall not be considered Capital Contributions.

## ARTICLE FIVE
## DISTRIBUTIONS

5.1     Distribution of Available Cash.

The Available Cash of the Company, if any, shall be distributed at such time as the Manager, with the consent of the Member, shall determine.

5.2     Distribution Following Terminating Capital Transaction.

Distributions following a Terminating Capital Transaction shall be distributed in the manner set forth in Section 7.2 hereof.

## ARTICLE SIX
## TAX STATUS

Solely for United States federal income tax purposes, as a "single member limited liability company," the Company shall be disregarded as an entity separate from the Member pursuant to the default classification prescribed under Section 301.7701-3(b)(1)(ii) of the Regulations.  Accordingly, the Company shall be treated for federal tax purposes in the same manner as a sole proprietorship, branch, or division of the Member, shall not have a separate existence, and all tax attributes of the Company shall be reported by the Member.  The Member shall take, or refrain from taking, any and all actions as may be necessary or appropriate to ensure the treatment of the Company as a disregarded entity for federal income tax purposes.

DOE 001018

## ARTICLE SEVEN
## DISSOLUTION; TERMINATION

7.1     Dissolution.

The Company shall be dissolved, its assets shall be disposed of, and its affairs wound up only upon the occurrence of one or more of the following events ("Event of Termination"):

(a)     The written election by the Member that the Company should be dissolved; or

(b)     Any event pursuant to which the Company is required to be dissolved under the Law.

7.2     <u>Wind-Up</u>.

Upon the dissolution of the Company, the Manager, with the consent of the Member, shall make a final accounting of the business and affairs of the Company and shall proceed with reasonable promptness to liquidate the business, property and assets of the Company and to distribute the proceeds in the following order of priority:

(a)     To the payment of expenses of any sale, disposition or transfer of the Company assets in liquidation of the Company;

(b)     To the payment of just debts and liabilities (including any accrued, but unpaid interest) of the Company (including to the Member), in the order of priority provided by law;

(c)     To the establishment of any reserve that the Manager, with the consent of the Member, may determine to be reasonably necessary and adequate for any contingent liabilities and obligations of the Company or the Member arising out of or in connection with the business of the Company; and

(d)     To the Member.

The Member may elect to distribute the remaining property and assets of the Company, if any, in kind, in lieu of selling them.

DOE 001019

ARTICLE EIGHT
GENERAL PROVISIONS

8.1   Gender and Use of Singular and Plural.

All pronouns shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the party or parties, or their personal representatives, successors and assigns may require.

8.2   Headings.

The article and section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

8.3   Governing Law.

This Agreement shall be construed in accordance with the laws of the State of Florida, and agreed upon venue, to the extent permitted by law, shall be Palm Beach County, Florida.

8.4   Provisions Severable.

This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules, and regulations of the jurisdiction in which the parties do business. If any provision of this Agreement, or the application thereof to any Person or circumstance shall, for any reason or to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.


THIS SPACE INTENTIONALLY LEFT BLANK

SIGNATURES CONTINUE ON FOLLOWING PAGE

DOE 001020

IN WITNESS WHEREOF, the undersigned has executed this Operating Agreement effective as of the day and year first above written.

**MEMBER:**

_____

HERBERT CORKIN

## JOINDER

The undersigned, hereby agrees to serve as Manager of 533 Harbor Court, LLC, a Florida limited liability company in accordance with the terms of this Agreement and hereby joins in, and agrees to be bound by, the terms and provisions of this Agreement.

GERALD DIAMOND

9

DOE 001021

```
        BIRMINGHAM, AL  35201
---     (877) 502-2265
                                        ---

---              ---

                                        LAST STMT

---                              ---
                                 ACCOUNT NO
        533 HARBOR COURT LLC     8041277230
        1177 GEORGE BUSH BLVD #100
        DELRAY BEACH FL  33483          STMT DATE
                                        12/31/04
                                        15 E 90
                                 PG      1


        COLONIAL BANK APPRECIATES YOUR BUSINESS.
         THANK YOU FOR BEING OUR CUSTOMER.
                    * * *
```

* * * * * * * * * CHECKING ACCOUNT SUMMARY * * * * * * * * * *
PREVIOUS BALANCE              .00    AVG COLL BALANCE
+        1 CREDITS      560,000.00          232,955.94
-       23 DEBITS      335,648.31    YTD INTEREST PAID
-   SERVICE CHARGES          .00                  .00
+     INTEREST PAID          .00
ENDING BALANCE         224,351.69

* * * * * * * * CHECKING ACCOUNT TRANSACTIONS * * * * * * * * *
    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION    CHKNO/ATM CD
12/21    560,000.00 INCOMING WIRE CREDIT                0944010503
   JONES FOSTER JOHNSTON
    CHECKS
DATE..CHECK NO..........AMOUNT   DATE..CHECK NO..........AMOUNT
12/23          4,000.00 12/28              2,000.00  0771022361  0771810455
12/24          2,000.00 12/31              5,500.00  0667121660  0660719697
12/27          2,000.00 12/31              2,000.00  0667626591  0660734815
12/28         23,110.12 12/23       91    20,000.00  0771732860  0666804776
12/28          4,988.03 12/22       92     7,000.00  0771617309  0666430027
    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION    CHKNO/ATM CD
12/22     25,000.00 DEBIT MEMO                          0666430114
12/22     20,000.00 DEBIT MEMO                          0666430112
12/22     17,110.92 DEBIT MEMO                          0666430021
12/22     10,000.00 INET/IB TRFR DR                     0000009864
12/23     16,800.00 OUTGOING WIRE DEBIT                 0944011526
   GREENBERG & STIELITZ PA 8041277230
12/23      8,000.00 OUTGOING WIRE DEBIT                 0944011527
   JEFFREY MACFARLANE 8041277230
12/23      5,889.24 OUTGOING WIRE DEBIT                 0944011525
   SULLIVAN GROUP INC 8041277230
12/23     75,000.00 INET/IB TRFR DR                     0000011524
12/27     50,000.00 INET/IB TRFR DR                     0000054232
12/30     21,000.00 DEBIT MEMO                          0772429460
12/30      5,500.00 DEBIT MEMO                          0772429464
12/30      8,750.00 OUTGOING WIRE DEBIT                 0944004360
   DEBORAH O'CONRELL 8041277230

```
         BIRMINGHAM, AL  35201          ---
         (877) 502-2265
   ---                                  ---
   ---                                  ---
   ---                                  ---
   ---                                            LAST STMT
                                                   12/31/04
   ---                                  ---  LAST PAGE
                                                ACCOUNT NO
         533 HARBOR COURT LLC                   8041277230
         1177 GEORGE BUSH BLVD #100
         DELRAY BEACH FL  33483                 STMT DATE
                                                 01/31/05
                                                  3 E 90
                                              PG      1
```

PLEASE SEE REVISED FEE SCHEDULE FOR BUSINESS ADVANTAGE
CHECKING.

```
* * * * * * * * CHECKING ACCOUNT SUMMARY  * * * * * * * * *
PREVIOUS BALANCE         224,351.69       AVG COLL BALANCE
 +      0  CREDITS              .00            43,349.10
 -      8  DEBITS         223,450.00     YTD INTEREST PAID
 -   SERVICE CHARGES          70.00                  .00
 +   INTEREST PAID             .00
ENDING BALANCE              831.69
```

```
* * * * * * * * CHECKING ACCOUNT TRANSACTIONS * * * * * * * *
   CHECKS
DATE..CHECK NO..........AMOUNT   DATE..CHECK NO..........AMOUNT
01/10                6,000.00 01/21              5,000.00  0774625493  0771409133
   OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION     CHKNO/ATM CD
01/03     65,000.00 INET/IB TRFR DR                       0000054923
01/04     40,000.00 INET/IB TRFR DR                       0000010258
01/06     20,000.00 DEBIT MEMO                            0661914427
01/06     25,000.00 INET/IB TRFR DR                       0000001923
01/12     62,000.00 INET/IB TRFR DR                       0000093062
01/14        450.00 INET/IB TRFR DR                       0000013636
01/18         70.00 ANALYZED SERVICE CHRG                 0010083160
```

```
* * * * * * * * CUSTOMER BALANCE SUMMARY  * * * * * * * * *
    DATE.........BALANCE   DATE.........BALANCE
    12/31    224,351.69    01/12      6,351.69
    01/03    159,351.69    01/14      5,901.69
    01/04    119,351.69    01/18      5,831.69
    01/06     74,351.69    01/21        831.69
    01/10     68,351.69
```

```
                 BIRMINGHAM, AL  35201           ---
                 (877) 502-2265                  ---

        ---                               ---


                                              LAST STMT
                                               01/31/05
                        ---
        533 HARBOR COURT LLC                  ACCOUNT NO
        1177 GEORGE BUSH BLVD #100            8041277230
        DELRAY BEACH FL  33483
                                               STMT DATE
                                               02/28/05
                                               12 E 90
                                              PG        1


              COLONIAL BANK APPRECIATES YOUR BUSINESS.
                THANK YOU FOR BEING OUR CUSTOMER.
                             * * *
```

```
* * * * * * * *  CHECKING ACCOUNT SUMMARY  * * * * * * * * *
PREVIOUS BALANCE           831.69      AVG COLL BALANCE
  +     3 CREDITS       555,000.00              56,224.96
  -    19 DEBITS        553,402.88      YTD INTEREST PAID
  -  SERVICE CHARGES          .00                    .00
  +  INTEREST PAID            .00
ENDING BALANCE           2,428.81
```

```
* * * * * * * *  CHECKING ACCOUNT TRANSACTIONS * * * * * * * * *
    DEPOSITS AND OTHER CREDITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION    CHKNO/ATM CD
02/01   500,000.00 INCOMING WIRE CREDIT                     0944030097
    GERALD DIAMOND
02/04    50,000.00 CREDIT MEMO                              0666332275
02/18     5,000.00 INET/IB TRFR CR                          0000024118
    CHECKS
DATE..CHECK NO..........AMOUNT   DATE..CHECK NO..........AMOUNT
02/03            2,500.00  02/17            1,500.00   0665718009  0776823551
02/04            7,000.00  02/17            1,200.00   0666307828  0776830854
02/08              500.00  02/22            4,000.00   0775119971  0777412835
02/11            5,000.00  02/23            1,500.00   0775914377  0662418733
02/17            6,000.00                              0776830930
    OTHER DEBITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION    CHKNO/ATM CD
02/02    36,000.00 DEBIT MEMO                               0665117993
02/02    24,000.00 OUTGOING WIRE DEBIT                      0944003252
    FUTURE DEVELOPMENT 8041277230
02/02     4,375.00 OUTGOING WIRE DEBIT                      0944003253
    DEBORAH O'CONNELL 8041277230
02/02    85,000.00 INET/IB TRFR DR                          0000003251
02/03    10,000.00 OUTGOING WIRE DEBIT                      0944042365
    TIMOTHY DIAMOND 8041277230
02/03   115,000.00 INET/IB TRFR DR                          0000042366
02/04   225,000.00 DEBIT MEMO                               0666332274
02/08     6,133.06 NEXTEL8006396111 ACHBILLPAY 277255411992876  0312155394
02/14    15,000.00 INET/IB TRFR DR                          0000041196
02/23     4,694.82 NEXTEL8006396111 ACHBILLPAY 277255411834455  0374859609
```

Not Available

```
--- P O BOX 1887                         32        ---        ---        H
    BIRMINGHAM, AL   35201                          ---
    (877) 502-2265                                  ---

                                                    ---


                                             LAST STMT
                                    ---        01/31/05
                                    ---      LAST PAGE
                                             ACCOUNT NO
      ---                                    8041277230

      533 HARBOR COURT LLC
      1177 GEORGE BUSH BLVD #100              STMT DATE
      DELRAY BEACH FL   33483                  02/28/05
                                               12 E 90
                                             PG      2
```

* * * * * * * * * CUSTOMER BALANCE SUMMARY * * * * * * *

| DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|
| 01/31 | 831.69 | 02/11 | 31,323.63 |
| 02/01 | 500,831.69 | 02/14 | 16,323.63 |
| 02/02 | 351,456.69 | 02/17 | 7,623.63 |
| 02/03 | 223,956.69 | 02/18 | 12,623.63 |
| 02/04 | 41,956.69 | 02/22 | 8,623.63 |
| 02/08 | 35,323.63 | 02/23 | 2,428.81 |

# EXHIBIT "D"

10-K 1 d10k.htm FORM 10-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

----

# FORM 10-K

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2007

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission File Number: 1-13508

# THE COLONIAL BANCGROUP, INC.
### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **63-0661573** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **100 Colonial Bank Blvd.** | |
| **Montgomery, Alabama** | **36117** |
| (Address of principal executive offices) | (Zip Code) |

**(334) 676-5000**
(Registrant's telephone number, including area code.)

**None**
(Former name, former address and former fiscal year, if changed since last report)

Securities registered pursuant to Section 12(b) of the Act:

| **Title of Class** | **Name of each exchange on which registered** |
|---|---|
| Common Stock, $2.50 par value per share | New York Stock Exchange |

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Exchange Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to the Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☒        Accelerated filer ☐        Non-accelerated filer ☐        Smaller reporting company ☐
(Do not check if a smaller reporting company)

As of June 29, 2007, the aggregate market value of the registrant's common stock held by non-affiliates of the registrant was $3,739,218,772, based on the closing price of $24.97 per share as reported on the New York Stock Exchange. (For purposes of calculating this amount, all directors, officers and principal shareholders of the registrant are treated as affiliates.)

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable date.

| Class | Outstanding at February 15, 2008 |
|---|---|
| Common Stock, $2.50 par value per share | 158,049,332 shares |

## DOCUMENTS INCORPORATED BY REFERENCE

| Document | Parts Into Which Incorporated |
|---|---|
| Portions of Definitive Proxy Statement for 2008 Annual Meeting as specifically referred to herein. | Part III |

# PART I

## Item 1.   *Business*

### General

The Registrant, The Colonial BancGroup, Inc. (BancGroup, Colonial or the Company) is a Delaware corporation organized in 1974 as a bank holding company under the Bank Holding Company Act of 1956, as amended (the BHCA). BancGroup was originally organized as Southland Bancorporation, and its name was changed in 1981. Pursuant to the Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994, BancGroup consolidated its various banking subsidiaries into Colonial Bank. Pursuant to the Gramm-Leach-Bliley Financial Services Modernization Act (Gramm-Leach), BancGroup elected to become a financial holding company which allows it to affiliate with securities firms and insurance companies and to engage in other activities that are financial in nature, incidental to such financial activities, or complementary to such activities.

The principal activity of BancGroup is to supervise and coordinate the business of its subsidiaries and to provide them with capital and services. BancGroup derives substantially all of its income from dividends received from Colonial Bank. Various statutory provisions and regulatory policies limit the amount of dividends Colonial Bank may pay without regulatory approval. In addition, federal statutes restrict the ability of Colonial Bank to make loans to BancGroup.

At December 31, 2007, BancGroup and its subsidiaries had 4,646 full-time equivalent employees. BancGroup's principal offices are located at 100 Colonial Bank Blvd., Montgomery, Alabama 36117, and its mailing address is: P.O. Box 241148, Montgomery, Alabama 36124. BancGroup's telephone number at its principal office is (334) 676-5000.

### Subsidiary Bank

Colonial Bank was converted into a national banking association on August 8, 2003. Its legal name was changed to "Colonial Bank, National Association" but it still does business as, and is usually referred to herein as "Colonial Bank." As of December 31, 2007, Colonial Bank had a total of 338 branches, with 196 branches in Florida, 90 branches in Alabama, 18 branches in Georgia, 18 branches in Texas and 16 branches in Nevada. Colonial Bank conducts a general commercial banking business in its respective service areas and offers a variety of demand, savings and time deposit products as well as extensions of credit through personal, commercial and mortgage loans within each of its market areas. Colonial Bank also provides additional services to its markets through treasury management services, electronic banking services and credit card services. Through its wealth management area, Colonial Bank's wholly owned subsidiaries, Colonial Investment Services, Inc., Colonial Investment Services of Florida, Georgia, Nevada and Tennessee offer various insurance products and annuities for sale to the public. These subsidiaries are regulated by each state's department of insurance.

Colonial Bank encounters intense competition in its commercial banking business, generally from other banks located in its respective metropolitan and service areas. Colonial Bank competes for interest bearing funds with other banks and with many non-bank issuers of commercial paper and other securities. Competition also exists with banks in other metropolitan areas of the United States, many of which are larger in terms of capital resources and personnel. In the conduct of certain aspects of its commercial banking business, Colonial Bank competes with savings and loan associations, credit unions, mortgage banks, factors, insurance companies and other financial institutions. At December 31, 2007, Colonial Bank accounted for approximately 99.9% of BancGroup's consolidated assets.

### Other Financial Services Operations

BancGroup's subsidiary Colonial Brokerage, Inc., a Delaware corporation, provides full service and discount brokerage services and investment advice and is a member of and is regulated by the Financial Industry Regulatory Authority.

1

OJS 44 (Rev. 2/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**
533 Harbor Court, LLC

**(b)** County of Residence of First Listed Plaintiff    Palm Beach County, FL.
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Peter Bernhardt, Esq. and Carl T. Williams, Esq.
McDonald Hopkins, LLC
Flagler Center Tower
505 South Flagler Drive, Suite 300 West Palm Beach, FL. 33401  (561) 472-2121

**DEFENDANTS**
Colonial BancGroup, Inc. d/b/a Colonial Bank

County of Residence of First Listed Defendant   Montgomery County, AL.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Ben H. Harris, III
Miller, Hamilton, Snider & Odom, LLC
254 State Street
Mobile, AL. 36603   (251) 432-1414

**(d)** Check County Where Action Arose:  __ MIAMI- DADE  __ MONROE  __ BROWARD  __X PALM BEACH  __ MARTIN  __ ST. LUCIE  __ INDIAN RIVER  __ OKEECHOBEE HIGHLANDS

**II.  BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- __ 1 U.S. Government Plaintiff
- __ 2 U.S. Government Defendant
- __ 3 Federal Question (U.S. Government Not a Party)
- __X 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | __ 1 | __ 1 | Incorporated or Principal Place of Business In This State | X 4 | __ 4 |
| Citizen of Another State | __ 2 | __ 2 | Incorporated and Principal Place of Business In Another State | __ 5 | X 5 |
| Citizen or Subject of a Foreign Country | __ 3 | __ 3 | Foreign Nation | __ 6 | __ 6 |

**IV.   NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | PERSONAL INJURY / PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| __ 110 Insurance | PERSONAL INJURY | ' 610 Agriculture | ' 422 Appeal 28 USC 158 | 400 State Reapportionment |
| __ 120 Marine | __ 310 Airplane | ' 620 Other Food & Drug | ' 423 Withdrawal 28 USC 157 | 410 Antitrust |
| __ 130 Miller Act | __ 315 Airplane Product Liability | ' 625 Drug Related Seizure of Property 21 USC 881 | | 430 Banks and Banking |
| __ 140 Negotiable Instrument | __ 320 Assault, Libel & Slander | ' 630 Liquor Laws | PROPERTY RIGHTS | 450 Commerce |
| __ 150 Recovery of Overpayment & Enforcement of Judgment | __ 330 Federal Employers' Liability | ' 640 R.R. & Truck | ' 820 Copyrights | 460 Deportation |
| __ 151 Medicare Act | __ 340 Marine | ' 650 Airline Regs. | ' 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| __ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | __ 345 Marine Product Liability | ' 660 Occupational Safety/Health | ' 840 Trademark | 480 Consumer Credit |
| __ 153 Recovery of Overpayment of Veteran's Benefits | __ 350 Motor Vehicle | ' 690 Other | | 490 Cable/Sat TV |
| __ 160 Stockholders' Suits | __ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | 810 Selective Service |
| __ 190 Other Contract | __ 360 Other Personal Injury | ' 710 Fair Labor Standards Act | ' 861 HIA (1395ff) | 850 Securities/Commodities/Exchange |
| __ 195 Contract Product Liability | | ' 720 Labor/Mgmt. Relations | ' 862 Black Lung (923) | 875 Customer Challenge 12 USC 3410 |
| __ 196 Franchise | **PERSONAL INJURY** | ' 730 Labor/Mgmt.Reporting & Disclosure Act | ' 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | ' 362 Personal Injury - Med. Malpractice | ' 740 Railway Labor Act | ' 864 SSID Title XVI | 891 Agricultural Acts |
| __ 210 Land Condemnation | ' 365 Personal Injury - Product Liability | ' 790 Other Labor Litigation | ' 865 RSI (405(g)) | 892 Economic Stabilization Act |
| __ 220 Foreclosure | ' 368 Asbestos Personal Injury Product Liability | ' 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| __ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | | ' 870 Taxes (U.S. Plaintiff or Defendant) | 894 Energy Allocation Act |
| __ 240 Torts to Land | ' 370 Other Fraud | | ' 871 IRS— Third Party 26 USC 7609 | 895 Freedom of Information Act |
| __ 245 Tort Product Liability | ' 371 Truth in Lending | **IMMIGRATION** | | 900 Appeal of Fee Determination Under Equal Access to Justice |
| __ 290 All Other Real Property | ' 380 Other Personal Property Damage | ' 462 Naturalization Application | | |
| **CIVIL RIGHTS** | ' 385 Property Damage Product Liability | ' 463 Habeas Corpus-Alien Detainee | | 950 Constitutionality of State Statutes |
| __ 441 Voting | **PRISONER PETITIONS** | ' 465 Other Immigration Actions | | |
| __ 442 Employment | ' 510 Motions to Vacate Sentence | | | |
| 443 Housing/ Accommodations | **Habeas Corpus:** | | | |
| __ 444 Welfare | ' 530 General | | | |
| __ 445 Amer. w/Disabilities - Employment | ' 535 Death Penalty | | | |
| 446 Amer. w/Disabilities - Other | ' 540 Mandamus & Other | | | |
| __ 440 Other Civil Rights | ' 550 Civil Rights | | | |
| | ' 555 Prison Condition | | | |

**FOR OFFICE USE ONLY**

**IV.   ORIGIN**  (Place an "X" in One Box Only)

- ' 1 Original Proceeding
- X 2 Removed from State Court
- ' 3 Re-filed- see VI below)
- ' 4 Reinstated or Reopened
- ' 5 Transferred from another district (specify)
- ' 6 Multidistrict Litigation
- ' 7 Appeal to District Judge from Magistrate Judgment

a) Re-filed Case ' YES  X NO          b) Related Cases ' YES  X NO

**VI.  RELATED/RE-FILED CASE(S).** (See instructions second page):   JUDGE                DOCKET NUMBER

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause **(Do not cite jurisdictional statutes unless diversity):** 28 USC § 1332

**VIII.  CAUSE OF ACTION**  LENGTH OF TRIAL via **5** days estimated (for both sides to try entire case)

**IX.  REQUESTED IN COMPLAINT:**   ' CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND $     CHECK YES only if demanded in complaint: JURY DEMAND: ' Yes ' No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

SIGNATURE OF ATTORNEY OF RECORD

DATE  7/24/08

AMOUNT  350-     RECEIPT #  984428     IFP